954 So.2d 52 (2007)
STATE of Florida, Appellant,
v.
Xiomara Aracely LEBRON, Appellee.
No. 5D06-1035.
District Court of Appeal of Florida, Fifth District.
March 16, 2007.
Rehearing Denied April 25, 2007.
*53 Bill McCollum, Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellant.
James S. Purdy, Public Defender, and Michael S. Becker, Assistant Public Defender, Daytona Beach, for Appellee.
MONACO, J.
The sole issue on this appeal is whether the trial court erred in dismissing the State's charges against Xiomara Lebron for vehicular homicide pursuant to section 782.071, Florida Statutes (2004). Because we conclude that the State presented at least a prima facie case, we reverse.
The State initiated this proceeding by filing an information against Ms. Lebron charging her with two counts of vehicular homicide. The charging affidavit, filed by the investigating officer from the Florida Highway Patrol, indicated that at approximately 4:55 p.m. on a weekday Ms. Lebron was driving her car in the middle northbound lane of SR 423 in Orange County at 81 miles per hour in a 55 mile per hour zone. Ms. Lebron approached a slower moving vehicle in the same lane, and anticipating Ms. Lebron's approach, the slower moving vehicle began to enter into the right outside lane to allow her to move past. At the same time, Ms. Lebron also began to move to the right outside lane in an apparent attempt to pass the slower moving vehicle. The nearly simultaneous movements of the vehicles kept Ms. Lebron's vehicle behind the slower moving vehicle as the distance between them quickly decreased. When Ms. Lebron was then forced to take quick evasive action, she veered sharply to the left causing her to lose control of her vehicle. Her vehicle began to rotate counter-clockwise and traveled into the grass median. The vehicle continued to rotate in the median and upon reaching the opposite embankment became airborne. Ms. Lebron's vehicle traveled into the southbound lanes directly in the path of Lionel Otero. The left front of Ms. Lebron's vehicle struck the left front of Mr. Otero's vehicle. As a result, both Mr. Otero and Olga Otero, a passenger in his vehicle, sustained fatal injuries.[1]
When the State charged Ms. Lebron with vehicular homicide, she filed a motion to dismiss the charges pursuant to Florida Rules of Criminal Procedure 3.190(c)(4). The crux of the motion was that the undisputed facts did not establish a prima facie case of guilt against her. The only disputed fact in the cause, according to Ms. Lebron, was the speed of her vehicle at the time she lost control of it. The motion indicated that the driver of the slower vehicle in front of Ms. Lebron had related in a sworn statement that he did not recall if he signaled prior to making his lane change to the right. The passenger in the slower vehicle stated in a sworn statement that she did not believe the driver of that vehicle signaled prior to beginning the lane change. The facts demonstrated that when both vehicles noticed they were going into the right lane at the same time they both attempted to correct back to the middle lane, however, Ms. Lebron over *54 corrected and lost control of her vehicle. The driver of the slower vehicle indicated that apart from Ms. Lebron's speed he did not notice anything erratic about her driving patterns. In addition, the motion claimed that no witnesses testified that Ms. Lebron was driving in an aggressive manner prior to the crash and no other pre-crash violations were indicated apart from her speed.
The State filed a traverse noting that the driver of the slower vehicle stated that traffic on the day of the accident was mediocre to moderate. According to the State:
The defendant was speeding at least 27 miles per hour over the speed limit during rush hour while attempting to weave around other traffic, therefore, she could reasonably foresee that driving in such a manner and under such conditions was likely to cause death or great bodily harm.
The State argued that the accident was caused by the combination of Ms. Lebron's speeding and attempting to weave in and out of traffic during rush hour. The State also suggested that because Ms. Lebron regularly traveled this particular route to work at approximately 5:00 p.m., her familiarity with the conditions would mean that she knew that during rush hour, traffic would be "moderate to heavy." Finally, the State pointed to section 316.084(2), Florida Statutes (2005), which provides that a driver of a vehicle may overtake and pass another vehicle on the right side only under conditions permitting such movement in safety.
At the hearing on the motion to dismiss defense counsel pointed to the arresting officer's testimony that apart from her speed, there was no other improper or unlawful driving and that the traffic at that time was moderate. In other words, according to the defense, but for the simultaneous nature of the lane change, even given the speed, this accident would probably not have occurred. Moreover, the defense argued the term "rush hour traffic" was irrelevant because the driver of the slower vehicle had testified that there were no vehicles immediately to his right, left, in front of or behind him except for Ms. Lebron. Finally, defense counsel indicated that the reason the driver of the slower vehicle believed that Ms. Lebron didn't pass to the left was because the left hand lane immediately became a merge lane to the middle lane.
The trial court thereafter entered an order granting Ms. Lebron's motion to dismiss. The court noted that vehicular homicide cannot be proven without also proving the elements of reckless driving or that the defendant was driving with a willful, wanton disregard for safety. In addition, a defendant must reasonably foresee that the manner and conditions under which he or she was driving could cause death or great bodily harm. The court indicated that because the courts of Florida have thus far decided that speed alone is insufficient to establish reckless driving, then speed alone cannot, accordingly, support vehicular homicide.
When a defendant moves to dismiss a charge pursuant to Florida Rules of Criminal Procedure 3.190(c)(4), the State is required to show only a prima facie case, since the purpose of the motion is to allow a pretrial determination of the law of the case when material facts are not in dispute. The standard of review of a trial court's order in this connection is de novo. See State v. Williams, 918 So.2d 400 (Fla. 2d DCA 2006). The State, however, is entitled to the most favorable construction of the evidence and all inferences should be resolved against the defendant. Only when the most favorable construction to the State would not establish a prima facie *55 case of guilt should a rule 3.190(c)(4) motion to dismiss be granted. See State v. Pasko, 815 So.2d 680 (Fla. 2d DCA), review denied, 835 So.2d 268 (Fla.2002).
Vehicular homicide, pursuant to section 782.071, Florida Statutes (2004), is the killing of a human being, or the killing of a viable fetus by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another. In D.E. v. State, 904 So.2d 558, 561 (Fla. 5th DCA 2005), this court discussed "vehicular homicide."
Vehicular homicide is the killing of a human being, or the killing of a viable fetus by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another. See § 782.071, Fla. Stat. (2003). By definition, the crime cannot be proved without also proving the elements of reckless driving. See State v. Del Rio, 854 So.2d 692, 693 (Fla. 2d DCA 2003). Reckless driving is defined as driving with a willful or wanton disregard for safety. See Lewek v. State, 702 So.2d 527, 530 (Fla. 4th DCA 1997); § 316.192(1), Fla. Stat. (2003). "Willful" means "intentional, knowing, and purposeful," and "wanton" means "with a conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property." See W.E.B. v. State, 553 So.2d 323, 326 (Fla. 1st DCA 1989). . . .
As set out by the Florida Supreme Court in McCreary v. State, 371 So.2d 1024 (Fla.1979), the degree of culpability required to find reckless driving is less than that required for culpable negligence (the standard for manslaughter), but more than a mere failure to use ordinary care.
Although a person does not have to foresee the specific circumstances causing the death of a victim in order to be guilty of vehicular homicide, the person must have reasonably foreseen that the same general type of harm might occur if he or she knowingly drove a vehicle under circumstances that would likely cause death or great bodily harm to another.
D.E., 904 So.2d at 561. The analysis first involves a determination of what the circumstances were at the time the defendant was driving. Once the circumstances are understood, the analysis concludes by asking if it was reasonably foreseeable under those conditions that death or great bodily harm could occur.
A number of appellate courts in Florida have held that speed alone is insufficient as a basis for reckless driving. See, e.g., House v. State, 831 So.2d 1230 (Fla. 2d DCA 2002); W.E.B. v. State, 553 So.2d 323 (Fla. 1st DCA 1989); Hamilton v. State, 439 So.2d 238 (Fla. 2d DCA 1983). The origin of this maxim seems to have been obscured by time. This court, however, has never directly said that speed alone is not enough. When confronted with the issue, we, as most other appellate courts of this state, have found that speed was not alone in what amounted to reckless driving. Perhaps it is because excessive speed for the prevailing conditions is rarely without other circumstances. Even Hamilton, the most recent progenitor of this line of cases, found that excessive speed was accompanied by other circumstances so that in combination it amounted to reckless driving.
In any event, in the present case, we are once again not compelled to hold that speed alone is enough. We arrive at this conclusion because of the posture in which this case finds itself. This is an appeal from an order granting a motion made by Ms. Lebron pursuant to Florida *56 Rules of Criminal Procedure 3.190(c)(4). In order to survive this motion, the State, given the benefit of a view of the evidence and inferences most favorable to it, is required to make out only a prima facie case. See Brinkley v. State, 874 So.2d 1199 (Fla. 5th DCA 2004); State v. Patel, 453 So.2d 218 (Fla. 5th DCA 1984). It does not have to show guilt beyond a reasonable doubt, nor produce evidence sufficient to sustain a conviction. See State v. Bonebright, 742 So.2d 290 (Fla. 1st DCA 1998).
Given this rather low bar, we conclude that the trial court erred in granting the motion. The State traversed the motion with specific evidence that Ms. Lebron had operated her automobile at an excessive rate of speed at a time and under circumstances when traffic conditions might well make her operation of the vehicle reckless. In addition, her decision to attempt a pass of the slower vehicle on the right may have been improper in view of section 316.084(2), previously noted. Thus, at least for the purposes of the motion to dismiss, we think the State made out a prima facie case.
REVERSED and REMANDED.
PALMER and TORPY, JJ., concur.
NOTES
[1] The charging affidavit noted that Ms. Lebron had a restriction for corrective lenses on her driver's license and would normally wear contact lenses to correct her eyesight. On the morning of the crash she may not have been wearing a contact lens in her right eye because she was suffering from a case of pink eye. As this matter was not argued to the trial court, however, we do not consider it here.