# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-2160
LT Case No. 2018-CF-411

_____

GREGORY MICHAEL ANDRIOTIS,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Hernando County.
Stephen E. Toner, Jr., Judge.

William R. Ponall and Eric J. Sorice, of Ponall Law, Maitland, for
Appellant.

Ashley Moody, Attorney General, Tallahassee, and Daniel P.
Caldwell, Assistant Attorney General, Daytona Beach, for
Appellee.

January 3, 2025

SOUD, J.

    Appellant Gregory Andriotis appeals his convictions for one
count of vehicular homicide and three counts of reckless driving
causing serious bodily injury and the resulting 30-year sentence
imposed by the trial court. We have jurisdiction. *See* Art. V, §
4(b)(1), Fla. Const.; Fla. R. App. P. 9.030(b)(1)(A). We affirm.

I.

On September 15, 2016, Andriotis was driving north on Interstate 75 in Hernando County, Florida. At some time between 3:34 and 3:37 p.m., his vehicle rear-ended the vehicle carrying the four members of the Scherer family, which was stopped because of heavy congestion on the interstate. Tragically, one of the Scherer children was killed, and both parents and the second minor child were seriously injured.

In the minutes leading up to the accident and while driving his car, Andriotis used his cellular phone to perform the following tasks: access the internet, receive and place a total of five phone calls, download Microsoft Excel, and use the program to review spreadsheets until just seconds before the crash. Evidence indicates that Andriotis was on the phone at the time of the crash.

Eyewitnesses traveling behind Andriotis observed the stopped traffic ahead and then saw an explosion in the left lane, glass shattering, and car parts flying as a result of the impact. Incredibly, and importantly, at no time did Andriotis activate his brake lights or take evasive action to avoid the accident. There were no skid marks on the roadway indicating that Andriotis attempted to slow or stop prior to the collision. And the event data recorder in his vehicle indicated that the brake pedal was not depressed until the moment of the crash but that the anti-lock braking system did not engage.

The traffic homicide investigation conducted by the Florida Highway Patrol, including the eyewitness accounts and information from the event data recorder, established that Andriotis had a clear line of sight for approximately 1,906 feet to see the crash site. At the time of the crash, Andriotis was traveling 79 MPH (the posted speed limit was 70 MPH). As a result, he would have had 14 to 16 seconds to react to the stopped traffic in front of him. He failed to do so. Indeed, the event data recorder indicated that between 4 and 5 seconds before the impact—and again at 1 to 1.5 seconds prior to impact—the throttle percentage, and thus the speed, of Andriotis's vehicle was *increasing*.

The force exerted by the impact was so great that it propelled the Scherers's stopped car from 0 MPH to 41 MPH. A total of six

vehicles were involved in the crash, three of which were stuck together in the mangling of the automobiles. The vehicles were pushed more than 70 feet as a result of the accident. Further, the fatal injuries throughout the minor Scherer child's body caused by the severe force of the accident were both numerous and profound.

As a result of the accident, Andriotis was charged with one count of vehicular homicide, under section 782.071, Florida Statutes (2016), and three counts of reckless driving causing serious bodily injury, under section 316.192, Florida Statutes. Andriotis challenged the charges against him, both pretrial via a Florida Rule of Criminal Procedure 3.190(c)(4) motion to dismiss and during trial via his motion for judgment of acquittal, arguing the facts surrounding the car accident do not establish a prima facie case for vehicular homicide or reckless driving. More specifically, he argues that his conduct does not rise to the level of recklessness required for conviction on each of the charges against him. The trial court denied his pretrial motion to dismiss, as well as his motion for judgment of acquittal.

Following trial, Andriotis was found guilty as charged. The trial court adjudged him guilty of one count of vehicular homicide and three counts of reckless driving causing serious bodily injury. Andriotis was sentenced to the maximum on each charge, which totaled 30 years.

This appeal followed.

## II.

We review de novo a trial court's ruling on a rule 3.190(c)(4) motion to dismiss and a motion for judgment of acquittal. *State v. Cowart*, 301 So. 3d 332, 334 (Fla. 5th DCA 2020) (motion to

3

dismiss[1]); *see also Elias v. State*, 308 So. 3d 1127, 1130 (Fla. 5th DCA 2020) (motion for judgment of acquittal[2]).

In appealing, *inter alia*, the trial court's denial of both his motion to dismiss and his motion for judgment of acquittal, Andriotis presents essentially the same argument here as he did below—that the charged conduct and evidence presented at trial, while perhaps establishing careless driving, is insufficient to sustain a conviction for either vehicular homicide (count I) or reckless driving causing serious bodily injury (counts II–IV). His argument in this regard fails, as do all his claims of error.[3]

Florida law defines vehicular homicide as "the killing of a human being, or the killing of an unborn child by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another." *See* § 782.071(1), Fla. Stat. Consistent with the statute, vehicular homicide cannot be proved absent proof of the

---

[1] A trial court should grant a (c)(4) motion to dismiss only when it determines that the underlying facts, when viewed most favorably for the State, fail to establish a prima facie case of guilt and there is insufficient evidence upon which a jury could return a verdict of guilty. *Cowart*, 301 So. 3d at 334. In making its determination, the trial court's function is to look only to the prima facie sufficiency of allegations, not to evaluate or weigh the evidence. *See id.*

[2] In reviewing a trial court's denial of a motion for judgment of acquittal, Florida appellate courts uphold convictions supported by competent, substantial evidence. *See Sievers v. State*, 355 So. 3d 871, 883 (Fla. 2022). When viewing the evidence in a light most favorable to the State, if a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction. *See id.*

[3] Andriotis also claims the trial court erred in admitting into evidence (i) certain photographs and (ii) records of his cell phone use during certain times leading up to the accident. We affirm the trial court's challenged evidentiary rulings without further comment.

elements of reckless driving. *See State v. Lebron*, 954 So. 2d 52, 55 (Fla. 5th DCA 2007). Thus, the State was required to prove that Andriotis drove recklessly in order to convict him for either vehicular homicide or reckless driving causing serious bodily injury.

One is guilty of reckless driving when he "drives any vehicle in willful or wanton disregard for the safety of persons or property . . . ." *See* § 316.192(1)(a), Fla. Stat. "Willful" is defined as "intentional, knowing, and purposeful." *See Lebron*, 954 So. 2d at 55 (quoting *D.E. v. State*, 904 So. 2d 558, 561 (Fla. 5th DCA 2005)). "Wanton" means that which is done "with a conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property." *Id.*; *see also* Fla. Std. Jury Instr. (Crim.) 28.5. "[T]he degree of culpability required to find reckless driving is less than that required for culpable negligence (the standard for manslaughter), but more than a mere failure to use ordinary care." *Lebron*, 954 So. 2d at 55 (citing *McCreary v. State,* 371 So. 2d 1024 (Fla. 1979)).

Thus, in resolving this case, we consider (1) the totality of the circumstances surrounding the manner in which Andriotis operated his vehicle and (2) whether it was reasonably foreseeable in light of his conduct that death or great bodily harm could result. *See id.*

The circumstances presented in the record before us are sufficient to demonstrate the reckless manner in which Andriotis drove his vehicle in causing the underlying crash. While traveling on an interstate highway at a high rate of speed at least 9 MPH in excess of the posted 70 MPH speed limit, Andriotis was fully immersed in the use of his cell phone. Beyond simply making or receiving phones calls, he used his cell phone in the manner in which such devices are designed to be used today—as a small, handheld computer. Andriotis was accessing the internet, downloading Microsoft Excel software, and reading spreadsheets, in addition to performing other personal or business-related communications. So involved was he, that he never applied the brakes of his car before causing the fatal accident. This, despite the fact that at one point Andriotis would have had approximately 1,906 feet of clear visibility to observe the stopped traffic and 14–

5

16 seconds to stop and avoid the accident. Yet he never did so, as confirmed by eyewitness testimony and the event data recorder. Such conduct is plainly both willful and wanton.

Additionally, it was entirely foreseeable that death or great bodily harm could result from such reckless conduct.

> Although a person does not have to foresee the specific circumstances causing the death of a victim in order to be guilty of vehicular homicide, the person must have reasonably foreseen that the same general type of harm might occur if he or she knowingly drove a vehicle under circumstances that would likely cause death or great bodily harm to another.

*Id.* (quoting *D.E.,* 904 So. 2d at 561).

Here, a serious car accident causing injury or death is precisely the "type of harm" that is reasonably foreseeable because of the extreme inattentiveness such as was present in this case. When Andriotis willfully diverted his attention from his surroundings, and the responsibility of driving at highway speeds (even while exceeding the posted speed limit), to the extent that he failed to stop or even slow for stopped traffic—even though having 14 to 16 seconds to do so—the profound impact and resulting serious injury and death that occurred in this case were not only reasonably foreseeable but fairly certain to occur.

## III.

Since the record demonstrates that Andriotis's operation of his vehicle at material times surrounding the crash constitutes recklessness, and that the car accident causing injury or death was reasonably foreseeable, there is sufficient evidence to sustain his convictions. Accordingly, we AFFIRM Andriotis's convictions and the 30-year sentence imposed by the trial court.

It is so ordered.

EDWARDS, C.J., and HARRIS, J., concur.

6

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____