670 So.2d 1002 (1996)
STATE of Florida, Appellant/Cross-Appellee,
v.
Donna Irene MAY, Appellee/Cross-Appellant.
No. 95-00285.
District Court of Appeal of Florida, Second District.
February 7, 1996.
Rehearing Denied March 8, 1996.
Robert A. Butterworth, Attorney General, Tallahassee, and Erica M. Raffel, Assistant Attorney General, Tampa, for Appellant/Cross-Appellee.
James Marion Moorman, Public Defender, and John T. Kilcrease, Jr., Assistant Public Defender, Bartow, for Appellee/Cross-Appellant.
PATTERSON, Judge.
The state appeals from the trial court's postverdict order which grants Donna May's motion for judgment of acquittal. May cross-appeals the trial court's denial of her motion for a new trial and the denial of her motion to dismiss on double jeopardy grounds. We affirm the trial court's acquittal as to vehicular homicide, reverse its acquittal as to DUI manslaughter, and remand for a hearing on the motion for a new trial.
*1003 Donna May was charged with manslaughter, driving under the influence of a controlled substance causing a death (DUI manslaughter), and vehicular homicide. The charges were based upon May's operation of a motor vehicle on July 31, 1991, causing the death of Laura Hassan.
On July 31, 1991, May was driving a van on Gib-Galloway Road in Lakeland. Witnesses testified at trial that the van was not speeding, but it swerved across the lanes of traffic as it drove through the "S curves." Eventually, the van went off the left side of the road into a yard. The van pulled back onto the left lane of the road and collided with the station wagon Hassan was driving. At the scene of the accident, a highway patrol trooper noted that May appeared dazed and did not know what had happened.
On the morning of the accident, May went to Watson Clinic seeking treatment for a migraine headache. She told her doctor that she had had the headache for three days and had tried to alleviate the pain by taking Demerol tablets, Valium and Halcion, but had nausea and could not keep them down. May's doctor described May as awake, alert, and oriented, but in pain. He ordered the nurse to give May a shot of 75 mg. Demerol and 25 mg. Phenergan. Because the staff does not recommend that a patient drive after receiving these drugs, the nurse asked May, "Do you have someone with you?" Although May was not accompanied by anyone, she answered, "Yes, my mother." The nurse testified that she does not usually tell patients what medicine she is injecting or advise them not to drive.
May's doctor testified that migraine headaches alone can cause nausea, disorientation, memory loss, and can influence a person's motor skills, but that those effects are not common. The doctor testified that, as a practice, he asks if the patient has someone to drive them home after the medication, but he did not remember asking May. He does not always tell patients what medicine he is administering, but will usually tell them that he is giving something strong for pain. The doctor testified that Demerol could affect judgment and memory and that he would not have had May injected if he knew she was going to drive.
May testified that she has an associate degree from Baylor College of Medicine in Texas and is a radiologic technician. Her education included training in the use of pain medicine. In the past, she had worked at Winter Haven Hospital, at Lakeland Regional Medical Center, and at Watson Clinic, and had administered injections of Demerol to patients pursuant to doctors' orders. She stated that she would not have driven if she had known that she had been given Demerol. May does not remember calling the doctor, driving herself to his office, what happened in the doctor's office, filling a prescription, or the accident. The first thing she remembers is being asked about allergies and being told not to move because she was hurt. She does not remember where she was when this happened.
An expert in psychiatry and pharmacology testified that it is common for migraines to cause a person to become distracted and confused. A person having a migraine, still in severe pain, may forget the warning not to drive after receiving a Demerol shot. Moreover, the medication can confuse the person to the extent of causing the person to forget the caution. The expert testified that the potential side effects of Demerol vary from sedation and confusion to excitement, hallucination, blurred vision, or dizziness.
After the state rested its case, May entered a motion for judgment of acquittal on the ground that there was insufficient evidence to establish that May knew she had been injected with Demerol on July 31, 1991. The trial court took the motion under advisement. After the defense presented its evidence, May renewed the motion for judgment of acquittal. Again, the trial court took the motion under advisement.
The jury returned verdicts of not guilty to count I, manslaughter, and guilty as charged to count II, DUI manslaughter, and count III, vehicular homicide. The court still kept the motion for judgment of acquittal under advisement without ruling. May filed a renewed motion for judgment of acquittal and a motion for a new trial. At a hearing on the motions, May argued the lack of sufficiency *1004 and weight of the evidence. The trial court granted May's motion for judgment of acquittal as to both counts. The court did not specifically rule on the motion for a new trial.
We agree with the trial court's ruling that the record did not support a conviction for vehicular homicide. Vehicular homicide is the killing of a human being by the operation of a motor vehicle in a reckless manner likely to cause death or bodily harm. § 782.071(1), Fla.Stat. (1991). The state is required to prove reckless driving, which is driving in a willful or wanton disregard for safety. State v. Esposito, 642 So.2d 25 (Fla. 4th DCA 1994); W.E.B. v. State, 553 So.2d 323 (Fla. 1st DCA 1989); see § 316.192(1), Fla.Stat. (1991). "Willful" means "intentionally, knowingly and purposefully." Fla.Std. Jury Instr. (Misd.) (reckless driving). The record does not show that May willfully drove erratically, i.e., in a manner that would likely cause the death of another. See W.E.B., 553 So.2d at 326. Therefore, we affirm the granting of the judgment of acquittal as to the vehicular homicide charge.
In contrast, DUI manslaughter only requires proof that the operation of a vehicle by a person under the influence caused the death of another. Magaw v. State, 537 So.2d 564 (Fla.1989); see § 316.193(3), Fla.Stat. (1991). Reckless driving is not an element of DUI manslaughter; the state need only prove simple negligence in the operation of the vehicle. Collins v. State, 605 So.2d 568 (Fla. 5th DCA 1992). Whether May negligently operated her vehicle and caused Hassan's death was a question of fact for the jury. Since this was a factual issue, the trial court erred in substituting its judgment for that of the jury and granting the motion for judgment of acquittal as to the DUI manslaughter charge. See Davis v. State, 425 So.2d 654 (Fla. 5th DCA 1983). Therefore, we reverse the trial court's order and reinstate the DUI manslaughter conviction.
In granting May's motion for judgment of acquittal, the trial court rendered May's motion for a new trial moot. In light of this court's reversal of the trial court's ruling on the DUI manslaughter charge, we remand to the trial court for a hearing on the motion for a new trial.
Affirmed in part, reversed in part, and remanded.
DANAHY, A.C.J., and LAZZARA, J., concur.