6 So.3d 624 (2008)
Mark G. BERUBE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D06-3047.
District Court of Appeal of Florida, Fifth District.
February 8, 2008.
Rehearing Denied April 16, 2009.
James S. Purdy, Public Defender, and David S. Morgan, Assistant Public Defender, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Ann M. Phillips, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, E., Senior Judge.
Mark Berube challenges his vehicular homicide conviction, contending that the trial court erred in denying his motion for judgment of acquittal on the theory that the State failed to show that he was driving in a reckless manner sufficient to prove vehicular homicide. Because we agree that Berube did not act with the requisite level of recklessness, we reverse his conviction and direct that he be discharged.
Witnesses to the vehicle collision described a sunny weekday afternoon on a busy stretch of U.S. 192 between Kissimmee and St. Cloud. The dump truck driver following Berube's minivan testified that as he was approaching the intersection at about 45 to 50 miles per hour in the right through lane, he and Berube both moved to the center through lane; they had the green light. The vehicles in two left turn lanes had stopped for a red left turn light. Berube suddenly stopped without any warning or reason. The truck driver slammed on the truck's air brakes, *625 blasted his horn, and stopped a foot or two behind the minivan. The minivan paused two seconds, then executed a left turn across the opposite lanes of traffic. Vehicles stopped in the opposing left turn lanes obstructed the view, and the minivan collided with a small gold car. The front seat passenger of the gold car later died of her injuries.
Another driver in the intersection also observed the minivan stop in the through lane. He saw blue smoke from the truck's air brakes and heard its horn as it stopped abruptly behind the minivan. As the minivan crossed the opposing traffic lanes, one vehicle moved in time, but the gold car collided with it. Tracy Dunham, the driver of the gold car, slammed on her brakes when she saw the minivan, but was unable to avoid the collision.
Mrs. Berube testified that as they were about to make a left turn, she, their three children, and her sister panicked and screamed as the dump truck bore down on them from behind. Her husband never stopped at the green light in the through lane, but he hesitated before he made the left turn. The truck honked its horn, and they all screamed at her husband to move to avoid a collision.
The defense moved for a judgment of acquittal, contending that the State's evidence was insufficient to prove that Berube had operated a motor vehicle in a reckless manner likely to cause death or great bodily harm sufficient to support a charge of vehicular homicide. The court, denying the motion, stated that the evidence showed that Berube had violated the red turn signal and the jury would make a determination whether his act demonstrated a willful, wanton, or reckless disregard.
This court applies the de novo standard of review when reviewing a trial court's denial of a motion for judgment of acquittal. Sanchez v. State, 909 So.2d 981, 983 (Fla. 5th DCA 2005) (citing Pagan v. State, 830 So.2d 792, 803 (Fla.2002)). In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the State that a jury might fairly infer from the evidence. Lynch v. State, 293 So.2d 44, 45 (Fla.1974).
Vehicular homicide is the killing of a human being, or the killing of a viable fetus by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm, to another. § 782.071, Fla. Stat. (2005). Vehicular homicide cannot be proven without also proving the elements of reckless driving. State v. Del Rio, 854 So.2d 692, 693 (Fla. 2d DCA 2003). Thus, the State must necessarily adduce evidence showing conduct at least sufficient to constitute reckless driving, defined as involving a "willful or wanton disregard for the safety of persons or property." See § 316.192, Fla. Stat. (2005). The Florida Supreme Court describes recklessness as a degree of negligence that falls short of culpable negligence but is more than a mere failure to use ordinary care. McCreary v. State, 371 So.2d 1024, 1026 (Fla.1979).
Berube's degree of negligence falls below that observed in W.E.B. v. State, 553 So.2d 323, 326 (Fla. 1st DCA 1989), where the First District reversed a vehicular homicide conviction despite evidence that the juvenile had consumed three to five beers, was speeding and swerved off the edge of the pavement into an oncoming car. The court deemed that the evidence was insufficient to establish that he drove the vehicle in a reckless manner. As that court explained:
[V]ehicular homicide cannot be proven without also proving the elements of reckless driving. By the very fact that *626 the offense of vehicular homicide has been described by the supreme court as involving a degree of negligence more than a mere failure to use ordinary care, the state must necessarily adduce evidence showing conduct at least sufficient to constitute reckless driving as that offense is defined in Section 316.019, Florida Statutes, as involving a "willful or wanton disregard for the safety of persons or property...." In turn, "willful" means "intentionally, knowingly and purposefully," and "wanton" means with a "conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property." Fla. Std. Jury Instr. (Misd.) (reckless driving). Thus, although a defendant need not have foreseen the specific circumstances causing the death of the particular victim, it is sufficient that he or she should have reasonably foreseen that the same general type of harm might occur if he or she knowingly drives the vehicle under circumstances that would likely cause the death of another.
The admissible evidence in this case, taken in the light most favorable to the State, shows that Berube was driving on a busy four-lane road when he perceived behind him a truck's quick stop, squealing brakes, and air horn, and moved into the center of the intersection. In the double left turn lanes in both directions, cars were stopped for red lights. His panic stricken passengers screamed at him to move because they thought the truck still might hit them. He briefly hesitated and then executed an improper left turn across oncoming traffic. The cases demonstrating culpability for vehicular homicide show a level of recklessness far exceeding Berube's conduct. Berube was not intoxicated or otherwise distracted from the road while driving. He was not speeding, and his vehicle was mechanically sound, the weather clear and the day sunny.
What is missing from the State's proof is evidence that Berube, in an intentional, knowing, and purposeful manner, made an improper left turn with a conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property. See McCreary; W.E.B., and Del Rio. Because the State must prove that level of conduct to support recklessness, the evidence in this case falls short. We conclude that the trial court erred in denying Berube's motion for judgment of acquittal.
Accordingly, we REVERSE Berube's conviction and DIRECT the trial court to discharge him.
SAWAYA, J., concurs.
PALMER, C.J., dissents, with opinion.
PALMER, C.J., dissenting.
I cannot concur in the majority opinion for two reasons. First, the opinion accepts as fact testimony which the jury may have rejected in deciding the case. Second, the opinion fails to address a controlling case issued by this court which reaches a result contrary to the result reached by the majority opinion. As such, I respectfully dissent.
Although the majority opinion properly acknowledges that, in moving for the entry of a judgment of acquittal, the defendant admits both the facts stated in the evidence and every reasonable conclusion favorable to the State that a jury might fairly infer from the evidence, it then proceeds to accept as fact evidence which the jury may very well have rejected. Specifically, the majority takes as fact that the defendant's "panic stricken passenger screamed at him to move because they thought the truck still might hit them." *627 We have no way of discerning whether the jury believed such testimony and thus this court should not overrule the jury's verdict based upon the assumption that the jury accepted that testimony as being true.
Of equal concern is that the majority opinion fails to address binding precedent from this court. In State v. Ynocenscio, 773 So.2d 613 (Fla. 5th DCA 2000), this court reversed the trial court's dismissal of a vehicular homicide charge which alleged that the defendant, while passing another vehicle in the fog, collided with a motorcyclist and killed him. This court explained:
It is sufficient that he intend [sic] to drive as he did. Here, there is no question that Ynocenscio intended to pass a vehicle in the fog. This action was more than mere negligence. Passing in a fog which restricts visibility, even in an area normally safe for passing, is as reckless as passing on a curve without being able to see around the bend or passing upon approaching a hill without being able to see above the crest. Such a driver is gambling on an empty highway with potential death as the stakes. The fact that the defendant was not speeding, was driving on a straight section of the highway, and in a vehicle which was mechanically sound, does not lessen the recklessness of his action.
Id. at 614-615. Berube's alleged conduct was at least as reckless as the conduct alleged in Ynocenscio. Thus, absent an en banc decision from this court receding from Ynocenscio, this panel is bound by the law expressed therein.
In that regard, there is no doubt that Berube intended to drive as he did. After coming to a dead stop in a through lane of a road with a 50 mile per hour speed limit, and after the truck behind him came to a complete stop, Berube drove his vehicle across three lanes of oncoming traffic without first making sure that the lanes were clear. On these facts, the trial court properly denied Berube's motion for entry of a judgment of acquittal, concluding that it was for the jury to determine whether Berube's conduct was willful, wanton, or made with reckless disregard. As the trial court properly noted, it was reasonably foreseeable under these circumstances that death or great bodily harm would result when Berube drove across multiple lanes of traffic when he did not have the right of way and did not check to determine if the lanes were clear of traffic.
I would affirm.