# Third District Court of Appeal

**State of Florida**


Opinion filed October 1, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-1678
Lower Tribunal No. 12-12767
_____


**Luis Enrique Luzardo,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Ariana Fajardo, Judge.

Albert E. Acuña, for appellant.

Pamela Jo Bondi, Attorney General, and Jay E. Silver, Assistant Attorney General, for appellee.


Before SHEPHERD, C.J., and LAGOA and FERNANDEZ, JJ.

SHEPHERD, C.J.

This is an appeal by Luis Luzardo from a conditional plea of guilt, during which he expressly reserved for review a dispositive order denying his motion to dismiss a vehicular homicide charge informed against him.[1]  Luzardo argued below and maintains here that (1) his actions did not meet the level of recklessness required to convict him under the law, and (2) the conscious decision of the driver of the other vehicle to stop in Luzardo's lane of traffic was the actual cause of the accident.  After careful study, we conclude that while Luis Lazardo's operation of his motor vehicle may have been careless, even negligent, it did not meet the level of recklessness required to convict him of vehicular homicide, and therefore, direct his discharge from custody in this case.[2]  A brief summary of the facts of the case is necessary to explain our decision.

**FACTUAL AND PROCEDURAL HISTORY**

The accident in this case occurred on the Tamiami Trail at approximately 9:54 a.m. on Sunday, May 8, 2011, at the entrance to Gator Park, a small airboat and tourist attraction located on the south side of the Tamiami Trail in Miami-Dade County.  Tamiami Trail is a narrow, straight, two-lane road originally constructed in the 1920's, which traverses the Everglades in an east-west direction.  Gator Park

---

[1] We have jurisdiction pursuant to Florida Rule of Criminal Procedure 9.140(b)(2)(a)(i), which states that "[a] defendant who pleads guilty or nolo contendere may expressly reserve the right to appeal a dispositive order of the lower tribunal, identifying with particularity the point of law being preserved."

[2] This conclusion makes it unnecessary to consider Luzardo's second ground for reversal.

is located approximately 6.2 miles west of Krome Avenue, the demarcation for our purposes of the western-most population boundary of Miami-Dade County. The morning was clear and sunny. The traffic, as captured on a Gator Park surveillance video camera which serendipitously included the road in its scope, was light.

At the time of the accident, Luis Luzardo was travelling eastbound on Tamiami Trail in a white Ford Expedition at 83.9 miles per hour. The speed limit in the area, and on most of Tamiami Trail, is posted at 55 miles per hour. Luzardo and a friend were returning to Miami after one of their periodic bike rides in the area. Luzardo was familiar with the road and the location of Gator Park. Michelle Ward, a tourist from the United Kingdom, was driving in the opposite direction, heading to Gator Park with three friends to experience an airboat ride. She was driving a black Chevrolet Impala, which she had leased just the day before. She was unfamiliar both with the vehicle she was driving and the area in which she was travelling. She needed to get to Gator Park by 10:00 a.m. to obtain a discounted price on the airboat tickets.

Ward testified that as she approached Gator Park, she saw an available parking space in front of the building. She further testified that after deciding it was safe to do so, she commenced a left turn toward the available space, but applied her brakes in the middle of the eastbound lane when one of her passengers told her of Luzardo's approaching vehicle. When Luzardo realized Ward was not

3

going to complete her turn, Luzardo attempted to swerve around Ward's vehicle, but his diversionary maneuver was unsuccessful. Luzardo's Ford Expedition impacted the rear right passenger door of the black Impala, killing Rachel May Coulson.

The Florida Highway Patrol initially attributed the accident to Michelle Ward and charged her non-criminally with violating Luis Luzardo's right of way by turning left in front of oncoming traffic under section 316.122 of the Florida Statutes (2011). Over a year later, however, the State had a change of mind. Claiming "newly discovered evidence," it dismissed the non-criminal violation against Michelle Ward and charged Luzardo with "feloniously operat[ing] a motor vehicle in a reckless manner, to wit: SPEEDING WITHOUT REGARD FOR THE SAFETY OF OTHERS" in violation of section 782.071(1) of the Florida Statutes.[3,4] Both here and below Luzardo incants, in response, the oft-repeated statement in these type cases, that excessive speed alone will not support a conviction for

---

[3] The State's Information reads in full as follows:

> LUIS ENRIQUE LUZARDO, on or about May 08, 2011, in the County and State aforesaid, did unlawfully and feloniously operate a motor vehicle in a reckless manner, to wit: SPEEDING WITHOUT REGARD FOR SAFETY OF OTHERS, and thereby caused the death of RACHEL MAY COULSON, in violation of s. 782.071(1), Fla. Stat., contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.

[4] According to the last review date on the Florida Highway Patrol Traffic Homicide Investigation Report, the State actually knew Luzardo's excessive speed not later than August 17, 2011, a mere three months after the accident.

4

vehicular homicide pursuant to this statute. Although we eschew the box-checking legal methodology implied by the chant, we agree that the facts of this case do not rise to the level of recklessness necessary to support the conviction and sentence.

## ANALYSIS

The vehicular homicide statute in effect at the time of the accident in this case reads as follows: "'Vehicular homicide' is the killing of a human being, or the killing of a viable fetus by any injury to the mother, caused by the operation of a motor vehicle by another **in a reckless manner likely to cause the death of, or great bodily harm to, another.** §782.071, Fla. Stat. (2011) (emphasis added). Vehicular homicide is a lesser included offense of manslaughter, created to cover the hiatus between manslaughter by culpable negligence and the non-criminal traffic offense of reckless driving created by section 316.029, Fla. Stat. (1975). McCreary v. State, 371 So. 2d 1024, 1026 (Fla. 1979). The culpable conduct necessary to sustain proof of manslaughter under section 782.07 is conduct of "a gross and flagrant character, evincing reckless disregard of human life, or of the safety of persons exposed to its dangerous effects, or there is that entire want of care which would raise the presumption of a conscious indifference to consequences, or which shows wantonness or recklessness, or a grossly careless disregard of the safety and welfare of the public, or that reckless indifference to the

rights of others which is equivalent to an intentional violation of them." Id. Luzardo's conduct in this case does not rise to that level.

Neither carelessness nor ordinary negligence in the operation of a motor vehicle are sufficient to sustain a conviction for vehicular homicide. By definition, the crime of vehicular homicide requires proof of the elements of reckless driving. See State v. Lebron, 954 So. 2d 52 (Fla. 5th DCA 2007); see also D.E. v. State, 904 So. 2d 558 (Fla. 5th DCA 2005); State v. Del Rio, 854 So. 2d 92 (Fla. 2d DCA 2003). Reckless driving, in turn, is defined as driving "… in willful or wanton disregard for the safety of persons or property…." § 316.192(1)(a), Fla. Stat. (2012). "Willful" means "intentional, knowing and purposeful" and "wanton" means "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property." See W.E.B. v. State, 553 So. 2d 323 (Fla. 1st DCA 1989). In our view, the facts of this case, as unfortunate as they are, do not present a prima facie case of reckless driving either.

The determination of a prima facie case of recklessness in a vehicular homicide case is a fact intensive, ad hoc inquiry. The focus is on the actions of the defendant and, considering the circumstances, whether it was reasonably foreseeable that death or great bodily harm could result. D.E. v. State, 904 So. 2d 558, 562 (Fla. 5th DCA 2005). Most of the cases we have found that uphold a vehicular homicide conviction consist of facts much more egregious than ours.

6

See, e.g. Santisteban v. State, 72 So. 3d 187 (Fla. 4th DCA 2011) (finding reckless driving when defendant drove a gasoline truck, filled with 9,000 gallons of fuel, at excessive speeds around a curving highway ramp, while weaving around other drivers); State v. Lebron, 954 So. 2d 52 (Fla. 5th DCA 2007) (finding reckless driving where defendant, while speeding, attempted to pass a slower vehicle from the right lane, in the middle of traffic); D.E. v. State, 904 So. 2d 558 (Fla. 5th DCA 2005) (finding sufficient evidence to support reckless driving, when juvenile knowingly drove the car without adult supervision in violation of the law, far in excess of the speed limit, around a dangerous curve, near a school, in the dark, and in an area likely to become congested); Martinez v. State, 692 So. 2d 199 (Fla. 3d DCA 1997) (finding sufficient evidence to support a conviction for vehicular homicide where defendant drove 70 mph in a 30-mph zone, on a curving section of road, while passing another vehicle in a no-passing zone); Lewek v. State, 702 So. 2d 527 (Fla. 4th DCA 1997) (finding evidence was sufficient to establish reckless driving where defendant drove a car with shallow tire treads, a missing lug nut, and window tinting that was too dark at 60 mph in a 45-mph zone and failed to reduce speed for a yellow light, subsequently running a red light); State v. Knight, 622 So. 2d 188 (Fla. 1st DCA 1993) (finding a prima facie case for vehicular homicide where defendant did not possess a valid driver's license, was driving 65-70 mph in a 35-mph residential area, and was operating a damaged vehicle without the

7

consent of the owner); <u>Wright v. State</u>, 573 So. 2d 998 (Fla. 1st DCA 1991) (evidence was sufficient to sustain a vehicular homicide conviction where defendant had consumed both a full quart and half a six-pack of malt liquor, was travelling approximately 20 mph over the speed limit, was driving in the oncoming lane of traffic to pass another vehicle, and did not attempt to slow down or maneuver to avoid striking the victim); <u>Byrd v. State</u>, 531 So. 2d 1004 (Fla. 5th DCA 1988) (finding sufficient evidence to sustain a conviction for vehicular homicide where defendant drove at twice the posted speed limit in heavy traffic, was warned to slow down, and only tried to stop about six feet from another stopped vehicle); <u>Savoia v. State</u>, 389 So. 2d 294 (Fla. 3d DCA 1980) (finding sufficient evidence to support a vehicular homicide conviction where defendant, driving on a wet road, drove at 90 mph while intoxicated and crashed into a parked truck without attempting to apply brakes). Additionally, it is important to note that speeding is not itself a necessary component of vehicular homicide, as evidenced by multiple cases upholding convictions for vehicular homicide, despite an absence of speed. See <u>McCreary v. State</u>, 371 So. 2d 1024 (Fla. 1979); <u>Michel v. State</u>, 752 So. 2d 6 (Fla. 5th DCA 2000); <u>State v. Sheppard</u>, 401 So. 2d 944 (Fla. 5th DCA 1981).

Among the cases that we find most instructive, two of them come from the Second District Court of Appeal. In one, <u>House v. State</u>, 831 So. 2d 1230 (Fla. 2d

DCA 2002), the defendant, while driving a stolen car, sped through an intersection in a residential neighborhood, where trees blocked the drivers' views in both directions, at twice the 30-mile-per-hour posted speed limit. The State did not prove that House stole the car, and the theft was sufficiently attenuated temporally from the accident that the court did not consider it a factor in its recklessness decision. The District Court of Appeal found the evidence insufficient to support a verdict of vehicular homicide, chanting the familiar refrain, "Speed alone will not support a charge of vehicular homicide." Id. at 1233. The House court supported its reasoning by reference to another of its cases, Hamilton v. State, 439 So. 2d 238 (Fla. 2d DCA 1983). In contrast to House, Hamilton actually affirmed a vehicular homicide verdict arising out of the deaths of two children in a residential area of Lee County. The facts and circumstances leading to affirmance in Hamilton included: (1) the day was clear and dry; (2) the defendant was traveling on a level two-lane roadway more or less in the middle of the road; (3) there were no obstructions to her view ahead in the form of parked vehicles, foliage or other objects; (4) she was traveling in an all-residential area, heavily congested with children; (5) she was familiar with the area and roadway; (6) the road was posted with both a 30 mile-per-hour speed limit sign and a "SLOW-CHILDREN PLAYING" sign; (7) she failed to reduce her speed either before or after striking the children; and (8) the defendant failed to exercise even the slightest care to

9

avoid the collision. Id. at 238-39. The case before us is factually closer to House than to Hamilton.

Finally, State v. Gensler, 929 So.2d 27 (Fla. 3d DCA 2006), from this court contains some parallel facts. The facts of Gensler show that at approximately 3:15 a.m. on a dry, clear night, Police Officer Audria Gensler, was traveling northbound on South Dixie Highway in Miami-Dade County near 220th Street, where the posted speed limit was forty-five miles per hour. Pedestrians at that location cross South Dixie Highway without using the designated crosswalk to go to and from a food market, which was located one block off the Highway. Although many businesses were closed that evening, the food market was open. Officer Gensler, dispatched as a back-up officer to a call, proceeded through the intersection where the traffic light was a flashing yellow signal. According to an accident reconstruction expert, her speed was approximately ninety miles per hour. She struck and killed the victim, Robin Ivy, who was approximately four to five feet into the right traffic lane and just north of the crosswalk. At the time of the collision, the victim had alcohol and cocaine in her body. This court found that these facts presented a prima facie case for jury resolution. We said:

> Viewed in the light most favorable to the State and based on the fact that the defendant was traveling at a speed of ninety miles per hour-way over the posted speed limit of forty-five miles per hour-on a federal highway, at 3:00 a.m. where the street lights were out, coupled with the fact that she willfully disregarded a flashing, yellow traffic signal at the intersection one block from an open convenience store,

10

we find that the State established a prima facie case of recklessness on the part of the defendant-likely to cause the death of, or great bodily harm to another. McCreary v. State, 371 So.2d 1024 (Fla.1979); D.E., 904 So.2d at 563; Moye v. State, 571 So.2d 113 (Fla. 4th DCA 1990); see Michel v. State, 752 So.2d at 6. As such, the recklessness issue is within the province of the jury and not subject to a motion to dismiss. State v. Sheppard, 401 So.2d 944 (Fla. 5th DCA 1981) (recklessness and proximate cause under vehicular homicide statute to be resolved by jury and not on motion to dismiss).

Id. at 30.

The case before us is devoid of aggravating factors analogous to those found in either Hamilton or Gensler. Unlike Hamilton, the accident in our case did not occur in a residential area congested with children, there was no "SLOW-TOURIST ATTRACTION" sign on the road where Luzardo was travelling, and, unlike the driver in the Hamilton case, Luzardo did attempt to avoid the collision. And, unlike Gensler, the accident in our case occurred on a rural, dry road, in broad daylight, where it is not usual for automobiles to be entering or leaving the highway.

Lastly, the facts of this case are less compelling for a recklessness finding than any that our electronically assisted research has located that have either granted a motion to dismiss a vehicular homicide information or the evidence after trial was determined to be insufficient. The Second District Court of Appeal in House found that a vehicular homicide case did not lie, despite the fact that the defendant was speeding in a stolen vehicle. See House, 831 So. 2d at 1232-33. In

11

State v. Del Rio, 854 So. 2d 692 (Fla. 2d DCA 2003), the same court found that defendant's failure to see a pedestrian pushing her baby stroller approximately six feet from the curb and forty-seven feet in front of the defendant after making a left turn at a T-intersection was insufficient to establish a prima facie case of vehicular homicide. Other cases lead us to the same conclusion. See, e.g. Stracar v. State, 126 So. 3d 379 (Fla. 2d DCA 2013) (finding evidence insufficient to support conviction for vehicular homicide where defendant drove her vehicle into the opposing lane of traffic, did not attempt to brake the vehicle or avoid the crash, and tested positive for multiple substances, including alcohol, marijuana, oxycodone, and Xanax); Berube v. State, 6 So. 3d 624 (Fla. 5th DCA 2008) (finding defendant did not operate his vehicle in a reckless manner where defendant stopped in the middle of the road, then pulled into the intersection and attempted to make a left-hand turn from the center lane in response to his passengers warning him of an approaching truck); State v. May, 670 So. 2d 1002 (Fla. 2d DCA 1996) (finding no reckless driving where defendant, while under the influence of strong medication, swerved across lanes of traffic and off the road into a yard); Miller v. State, 636 So. 2d 144 (Fla. 1st DCA 1994) (finding evidence insufficient to establish reckless driving where defendant, though speeding around 15 to 20 mph in excess of the posted speed limit, had control of his vehicle and slowed as he approached the intersection); W.E.B. v. State, 553 So. 2d 323 (Fla. 1st DCA 1989) (finding

12

evidence insufficient to establish reckless driving where juvenile had consumed alcohol, was speeding, and drove off of the road from overcorrecting his turn). The facts of our case – speeding on a straight road in sunny weather with clear visibility in combination with the attempt to avoid a vehicle which inexplicably turned and braked in the defendant's path – are no more compelling than the facts of these exemplars.

Focusing on the actions of Luzardo, and considering the circumstances, we hold the State has not proffered sufficient facts from which a jury might conclude that Luzardo was engaged in reckless conduct "likely to cause the death of, or great bodily harm to another." §782.071. We therefore reverse the judgment of conviction and sentence in this case with directions to discharge the defendant on the charge informed against him. We decline to rest our decision on the "excessive speed alone . . ." jingle. If Luzardo had been traveling at a speed of 120 miles per hour at the time of the accident, our decision might be different. "Judgment by jingle" is a perilous exercise, but if there must be a jingle in this area of the law, we would prefer, "Speed alone is not enough, except when it is." See Rubinger v. State, 98 So.3d 659, 662 (Fla. 4th DCA 2012) (reserving for consideration a case where the speed of the defendant was "grossly excessive"). On the facts of this case, we reverse the judgment of conviction and sentence for proceedings in compliance herewith.

Reversed.