[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12622

_____

Agency No. A034-291-493


MICHAEL ROY SMITH,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 18, 2020)

Before WILLIAM PRYOR, Chief Judge, HULL and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

At issue today in this removal proceeding is whether vehicular homicide in

Florida is a crime of moral turpitude. The Board of Immigration Appeals ("BIA")

held that it is and ordered the petitioner, Michael Roy Smith, removed from the

United States because he has been convicted of two or more crimes of moral turpitude, pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii). We agree and, therefore, deny the petition.

## I.

Michael Smith, a Jamaican citizen, entered the United States in November 1973, at the age of 12 as a lawful permanent resident. Beginning in 1979, he acquired a criminal record including convictions for shoplifting, trespassing, and a probation violation arising out of an aggravated assault. The government commenced removal proceedings against Smith after a Palm Beach County jury found him guilty of three counts of vehicular homicide. Under the Immigration and Nationality Act, "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, . . . is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii). The government asserted that Smith had two qualifying convictions: his vehicular-homicide convictions, and a 1988 conviction for aggravated assault.

Smith's vehicular homicide convictions arose out of a January 2006 automobile accident when Smith struck and killed a mother and two of her daughters, while seriously injuring a third. After a jury trial, Smith was acquitted of three counts of driving-under-the-influence manslaughter, but was found guilty of three counts of vehicular homicide in violation of Fla. Stat. § 782.071. Thereafter,

Smith was sentenced to twenty-one-and-a-half years in prison on each count, the sentences to run concurrently with each other.

At a hearing before the Immigration Judge ("IJ"), Smith was asked about the facts surrounding his vehicular homicide convictions. While the state had charged Smith with driving under the influence of a controlled substance at the time of the accident, Smith denied having used marijuana on the day in question, claiming instead that traces of the drug, which had been found in his system, were the result of using marijuana two weeks earlier. He sought to downplay the severity of his vehicular-homicide offenses, claiming that, although he killed three people by running a red light, "it was not like I was swerving all over the place."

Smith similarly tried to disclaim the aggravated-assault conviction at the immigration hearing; that conviction had been associated with the alias "Patrick Smith." But Smith then recanted after the government introduced fingerprint records that proved he was indeed the Patrick Smith convicted in the aggravated-assault case. The Immigration Judge ruled that the convictions made Smith removable.

On appeal to the Board of Immigration Appeals, Smith argued, among other things, that his vehicular-homicide offense did not qualify as a crime involving moral turpitude ("CIMT"). He explained that, as interpreted by Florida's courts, the offense did not require "the requisite culpable mental state." The BIA disagreed, concluding that the offense was a crime involving moral turpitude and dismissed his

3

appeal.  The BIA reasoned that morally turpitudinous conduct involves "[a]n act of baseness, vileness, or depravity in the private and social duties [one] owes to [others] or to society in general, contrary to the accepted and customary rule of right and duty between [individuals]," Cano v. U.S. Att'y Gen., 709 F.3d 1052, 1053 (11th Cir. 2013), and that a conviction for vehicular homicide in Florida requires proof that a defendant is driving in a willful or wanton disregard for safety.  Smith now petitions this Court, again arguing that vehicular homicide is not a crime involving moral turpitude.

## II.

We review only the decision of the BIA, except to the extent that it adopts the IJ's decision or expressly agrees with the IJ's reasoning.  Gonzalez v. U.S. Att'y Gen., 820 F.3d 399, 403 (11th Cir. 2016).  We review de novo the question of whether a noncitizen's conviction qualifies as a crime involving moral turpitude. Gelin v. U.S. Att'y Gen., 837 F.3d 1236, 1240 (11th Cir. 2016).

A noncitizen is removable from the United States if he has been "convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct."  8 U.S.C. § 1227(a)(2)(A)(ii).  The term "moral turpitude" is not defined in the statute, but this Court has determined that it involves "an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule

4

of right and duty between man and man." Keungne v. U.S. Att'y Gen., 561 F.3d 1281, 1284 (11th Cir. 2009) (quotation marks omitted). In other words, we've said, "moral turpitude may inhere in criminally reckless conduct" which includes when "a defendant consciously disregards a substantial risk of serious harm or death to another." Id. at 1284–85 (citing, inter alia, In re Franklin, 20 I. & N. Dec. 867 (BIA 1994) (concluding that Missouri involuntary manslaughter was a CIMT where Missouri law required that the individual acts "recklessly," or when he "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation"); In re Wojtkow, 18 I. & N. Dec. 111 (BIA 1981) (concluding that New York second-degree manslaughter was a CIMT where New York law required that the individual "recklessly causes the death of another person"); In re Medina, 15 I. & N. Dec. 611 (BIA 1976) (concluding that Illinois aggravated assault was a CIMT where one of the three culpable mental states was recklessness)).

In cases like this one, we use the "categorical approach" to determine whether a noncitizen was convicted for an offense that qualifies as a crime involving moral turpitude. Fajardo v. U.S. Att'y Gen., 659 F.3d 1303, 1305 (11th Cir. 2011).[1] Under

---

[1] Because Florida's vehicular homicide statute does not list elements of the offense in the alternative, which would effectively create several different crimes, it is not considered to be a "divisible" statute. Gelin, 837 F.3d at 1241. If, however, the statutory definition of the crime

the categorical approach, we look to "the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct" and assess "whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." Keungne, 561 F.3d at 1284 & n.3 (quotation marks omitted). In performing this analysis, we "may rely on court decisions in the convicting jurisdiction that interpret the meaning of the statutory language." Gelin, 837 F.3d at 1243. Moreover, "[w]here the highest court -- in this case, the Florida Supreme Court -- has spoken on the topic, we follow its rule." Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1348 (11th Cir. 2011).

The vehicular homicide statute reads this way:

"Vehicular homicide" is the killing of a human being, or the killing of an unborn child by any injury to the mother, caused by the operation of a motor vehicle by another in a reckless manner likely to cause the death of, or great bodily harm to, another.

---

had included some conduct that would constitute a CIMT and some that would not, then we would employ a "modified categorical approach" and consider the record of conviction -- i.e., the charging document, plea, verdict, and sentence -- to determine whether the conviction falls within the scope of a CIMT. Fajardo, 659 F.3d at 1305.

6

Fla. Stat. § 782.071.[2]  The question before us is whether the level of intent needed to commit the crime of vehicular homicide in Florida is "sufficiently base, vile, or depraved" to constitute a crime involving moral turpitude.  Gelin, 837 F.3d at 1243.

Interpreting the intent element of the vehicular homicide statute, the Florida Supreme Court has said that the mens rea required to sustain a conviction for vehicular homicide -- recklessness -- amounts to more than simple negligence, but less than culpable negligence, which is required to sustain a conviction for manslaughter.  See McCreary v. State, 371 So. 2d 1024, 1026 (Fla. 1979).  It has explained:

> The legislature did not intend the word "reckless" used in the vehicular homicide statute to mean the same thing as the word "culpable" used in the manslaughter statute. . . . Certainly, it is within the authority of the legislature to make punishable as a third-degree felony reckless driving which results in the killing of a human being where the degree of negligence falls short of culpable negligence but where the degree of negligence is more than a mere failure to use ordinary care.

Id. (emphases added).

The Florida Supreme Court reasoned in McCreary that a heightened standard of negligence for vehicular homicide makes sense -- while vehicular homicide is a lesser included offense of manslaughter, "reckless driving" is a lesser included offense of vehicular homicide.  Id. at 1027.  Thus, "[i]t is not unreasonable for the

---

[2] Although the present version of Fla. Stat. § 782.071 differs from the 2001 version of the statute that was in effect when Smith was convicted, the relevant language of both versions is the same. See Florida Unborn Victims of Violence Act, ch. 14-194, 2014 Fla. Laws 1.

7

legislature to create a <u>lesser included offense</u> to cover the hiatus between section 782.071 manslaughter and the traffic offense of reckless driving created by section 316.029, Florida Statutes (1975)." <u>Id</u>. (emphasis added). "Reckless driving," by its very name, commands something more than mere negligence. <u>See</u> <u>Luzardo v. State</u>, 147 So. 3d 1083, 1086 (Fla. Dist. Ct. App. 2014). Florida's Third District Court of Appeal in <u>Luzardo v. State</u> explained:

> Neither carelessness nor ordinary negligence in the operation of a motor vehicle are sufficient to sustain a conviction for vehicular homicide. By definition, the crime of vehicular homicide requires proof of the elements of reckless driving. Reckless driving, in turn, is defined as driving " . . . in willful or wanton disregard for the safety of persons or property . . . ." [Fla. Stat. § 316.192(1)(a) (2012))]. "Willful" means "intentional, knowing and purposeful" and "wanton" means "with a conscious and intentional indifference to consequences and with the knowledge that damage is likely to be done to persons or property."

<u>Id</u>. (internal citations omitted).[3]

Since reckless driving in violation of Fla. Stat. § 316.192 is a lesser included offense of vehicular homicide, and since a conviction for reckless driving plainly requires willful or wanton conduct, it necessarily follows that a conviction for vehicular homicide requires a finding of willful or wanton conduct as well. <u>See id</u>.

---

[3] Although <u>Luzardo v. State</u> addressed the 2012 version of the reckless driving statute, the same language concerning "willful or wanton disregard for the safety of persons" appeared in the reckless driving statute in 2006, when Smith was convicted of vehicular homicide. <u>See</u> Fla. Stat. § 316.192(1) (2006).

8

The Florida Supreme Court's definition of "reckless" is also consistent with the ordinary definition of "reckless," which is "[c]haracterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash. Reckless conduct is much more than mere negligence: it is a gross deviation from what a reasonable person would do." Reckless, BLACK'S LAW DICTIONARY (11th ed. 2019). Moreover, and altogether consistent with the ordinary understanding of recklessness, the Florida Supreme Court requires a defendant's reckless conduct to likely cause the death of, or great bodily harm to, another. McCreary, 371 So. 2d at 1027 ("The conduct prohibited by th[e] [vehicular homicide] statutory provision is reckless driving, likely to cause death or great bodily harm, which results in the killing of another human being.") (emphasis added). This is in sharp contrast to the Florida Supreme Court's explication of simple negligence, which it has defined as "that course of conduct which a reasonable and prudent man would know might possibly result in injury to persons or property." Carraway v. Revell, 116 So. 2d 16, 22 (Fla. 1959) (emphasis added).

Although some of Florida's district courts of appeal have not been uniformly consistent in the language they have used concerning the mens rea required for a vehicular homicide conviction, uniformly they have followed the Florida Supreme Court in McCreary and acknowledged that the degree of culpability required, while

9

less than culpable negligence, is more than the failure to use ordinary care. See, e.g., Luzardo, 147 So. 3d at 1086; Santisteban v. State, 72 So. 3d 187, 195 (Fla. Dist. Ct. App. 2011); State v. Lebron, 954 So. 2d 52, 55 (Fla. Dist. Ct. App. 2007); Michel v. State, 752 So. 2d 6, 12 (Fla. Dist. Ct. App. 2000); Lewek v. State, 702 So. 2d 527, 530–31 (Fla. Dist. Ct. App. 1997); Rushton v. State, 395 So. 2d 610, 612 (Fla. Dist. Ct. App. 1981). In any event, the Florida Supreme Court has provided us with guidance about the mens rea required to sustain a conviction for vehicular homicide, and we are obliged to follow its interpretation of the relevant statute. Molinos Valle Del Cibao, 633 F.3d at 1348.

Smith says, nevertheless, that Florida's standard jury instructions did not require proof of "willful or wanton" behavior nor "conscious disregard" in order to sustain a vehicular homicide conviction. This argument founders for three reasons. In the first place, as we explained many years ago, "the adoption of standard instructions prepared by a committee designated by the Florida Supreme Court does not necessarily adorn those charges with the force of precedent. While that court 'generally' approves the instructions, it expressly refrains from determining whether they 'correctly state the law of Florida.'" Somer v. Johnson, 704 F.2d 1473, 1476 n.2 (11th Cir. 1983) (citing In re Standard Jury Instructions, 198 So. 2d 319 (Fla. 1967); Fla. R. Civ. P. Form 1.985); see also In re Standard Jury Instructions In Criminal Cases--No. 2006-1, 946 So. 2d 1061, 1062 (Fla. 2006) (providing that by

"authoriz[ing] the publication and use of the instructions as set forth in the appendix to this opinion, . . . we express no opinion on the correctness of the instructions"). Second, the standard jury instructions in fact require a finding that a defendant acted with "more than a failure to use ordinary care" and operated a vehicle in a "reckless manner."  See In re Standard Jury Instructions in Criminal Cases--No. 2006-1, 946 So. 2d at 1067.  Finally, and even more basic, we are bound by the Florida Supreme Court and the text of the statute, which require a defendant to have driven a motor vehicle in a reckless manner likely to cause death or great bodily harm.  Fla. Stat. § 782.071; McCreary, 371 So. 2d at 1027.

Thus, we conclude that Smith's vehicular homicide offense contains the necessary mens rea to constitute a crime of moral turpitude.  Criminally reckless conduct is at the heart of Florida's vehicular homicide statute, just as it is at the heart of Georgia's criminal reckless conduct statute.  See Keungne, 561 F.3d at 1286–87 (observing that Georgia's criminal reckless conduct statute: (1) required that an individual's conduct went "beyond mere negligence so as to constitute a 'gross deviation' from the standard of care expected from a reasonable person"; (2) involved the individual "consciously disregarding a 'substantial and unjustifiable risk'" that his act or omission would cause harm or endanger the safety of another person; and (3) required that the individual's conduct caused harm or endangered the safety of another person).  As we explained in Keungne, "[p]art of the duties that

11

a man owes to his fellow men and society is that he will exercise reasonable care to avoid the risk of causing harm or endangering others." Id. at 1287. When a person deviates from the standard of care by operating a motor vehicle so recklessly that it is likely to cause death or great bodily harm, and, in fact, results in the killing of a human being, see Fla. Stat. § 782.071, we have little difficulty finding that "he has exhibited the 'baseness' in the duties owed to society that constitutes moral turpitude." Keungne, 561 F.3d at 1287.

A conviction in Florida of vehicular homicide is categorically a crime involving moral turpitude, and Smith is removable under the controlling statute. Accordingly, we deny his petition for review.

**PETITION DENIED.**

12