DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**OSCAR ACEVEDO,**
Appellee.

No. 4D21-3218

[June 7, 2023]

Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Andrew L. Siegel, Judge; L.T. Case No. 18-007309CF10A.

Ashley Moody, Attorney General, Tallahassee, and Luke R. Napodano, Assistant Attorney General, West Palm Beach, for appellant.

Jeremy J. Kroll of Dutko & Kroll, P.A., Fort Lauderdale, for appellee.

KUNTZ, J.

On January 4, 2023 we issued an opinion reinstating this appeal and vacating our order of dismissal. *See State v. Acevedo*, 357 So. 3d 130 (Fla. 4th DCA 2023). Now we address the merits of the State's appeal of the trial court's non-final order granting two motions to suppress. On the merits, the State argues the trial court erred when it suppressed Acevedo's blood draw and evidence seized after a judge issued a warrant to search Acevedo's car. We agree on both points and reverse.

### A. Background

Following a fatal rear-end collision, the State charged Acevedo with DUI manslaughter (unlawful blood alcohol level); DUI manslaughter (impairment); vehicular homicide; four counts of DUI with serious bodily injury (unlawful blood alcohol level); four counts of DUI with serious bodily injury (impairment); and four counts of reckless driving with serious bodily injury.

Acevedo filed three motions to suppress the State's evidence. On appeal, we address the trial court's orders granting Acevedo's motion to suppress the evidence of blood alcohol testing and his motion to suppress the Electronic Data Recorder (EDR) evidence obtained from the search of the vehicle he was driving at the time of the crash.

During early morning hours, Acevedo's car struck the rear of another vehicle traveling in the same direction on an expressway. One of the occupants in the other vehicle was killed and other occupants were seriously injured.

At a hearing on the defendant's motion seeking suppression of blood alcohol testing, one of the first officers on the scene testified that she spoke with Acevedo when she arrived. She noticed Acevedo emitted a high odor of alcohol, was swaying, and had glossy eyes.

A sergeant testified that he was asked to meet Acevedo at the hospital. At the hospital, he observed that Acevedo had bloodshot glassy eyes and smelled of alcohol. But, in a prior deposition, the sergeant said he was too far away to smell anything. At the hearing, the sergeant testified that a trooper asked for consent to draw blood and Acevedo consented. The sergeant did not recall that anything was said between the trooper and Acevedo.

Similarly, the trooper testified that he responded to the crash, and his role was to preserve the scene and conduct a preliminary investigation. The trooper was at the scene for about an hour when the lead investigator asked him to check on Acevedo, who had been taken to the hospital. At the hospital, the trooper noticed Acevedo had bloodshot glassy eyes and smelled strongly of alcohol. The Florida Highway Patrol has a policy to request a blood sample when there is a fatality, so the trooper requested and received Acevedo's consent. At the suppression hearing, the trooper denied telling Acevedo that if he did not consent, then the trooper would get a warrant or that the trooper had a right to forcibly take blood. But in a prior deposition, when the trooper was asked if he had told Acevedo that he would get a warrant and had a right to forcibly take a sample if Acevedo refused, the trooper responded: "I believe so."

The trooper also testified that after Acevedo was released from the hospital, the trooper informed Acevedo that the trooper was conducting a criminal investigation for DUI. Acevedo responded that he was the only one in the vehicle, he was driving, that he remembered hitting the other vehicle and seeing it catch fire, and that he tried to help the passengers

out of the other vehicle.  He first denied having any alcohol, but later said he had one drink.

Finally, the blood alcohol results showed Acevedo's blood alcohol content was twice the .08 legal limit.  The event data recorder indicated that Acevedo was driving 106 mph five seconds before the crash and 104 mph one second before the crash.

After the suppression hearing, the trial court suppressed the blood test results.  The trial court concluded that the State failed to show by a preponderance or through clear and convincing evidence that Acevedo voluntarily consented to the blood draw.  The trial court reached this conclusion based on its finding that Acevedo was not informed of the right to refuse and was misadvised that if he did not agree, law enforcement would get a warrant and take a blood sample against his will.

Regarding the motion to suppress the EDR evidence obtained from the search of Acevedo's car, the evidence showed that law enforcement obtained a search warrant for the vehicle which sought the EDR to obtain evidence of the vehicle's operation just before the crash to assist with determining the cause of the crash.  However, in granting the motion to suppress the EDR evidence, the trial court determined that the search warrant was improper because the affidavit did not allege sufficient facts to show probable cause that Acevedo committed a crime and to conclude evidence of a crime would be found in his vehicle.

### B. Analysis

### i.  The Trial Court Erred When it Suppressed Acevedo's Blood Draw

The State argues the trial court erred when it concluded that Acevedo did not consent to the blood draw.  Whether consent is voluntary is a question of fact determined by the totality of the circumstances. *Reynolds v. State*, 592 So. 2d 1082, 1086 (Fla. 1992) (citing *United States v. Mendenhall*, 446 U.S. 544, 557 (1980)).  The State has the burden of showing the voluntariness of consent by a preponderance of the evidence, and this burden is not satisfied by a mere submission to authority.  *Id.* But where an illegal detention or other illegal police conduct occurs, then consent is voluntary only if clear and convincing evidence shows "the consent was not [the] product of the illegal police action."  *Id.* (citing *Norman v. State*, 379 So. 2d 643, 646-47 (Fla. 1980)).

Factors a court may consider when determining whether consent was voluntary under the totality of the circumstances include:

(1) the time and place of the encounter; (2) the number of officers present; (3) the officers' words and actions; (4) the age and maturity of the defendant; (5) the defendant's prior contacts with the police; (6) whether the defendant executed a written consent form; (7) whether the defendant was informed that he or she could refuse to give consent; and (8) the length of time the defendant was interrogated before consent was given.

*Montes-Valeton v. State*, 216 So. 3d 475, 480 (Fla. 2017).

The State argues this case's facts resemble those found in *Miller v. State*, 250 So. 3d 144 (Fla. 1st DCA 2018). In that case, the court concluded the defendant driver's consent to a blood draw was not coerced by an officer who had "explained that refusal to consent would require him to get a warrant (for which probable cause existed) to obtain the blood sample." *Id.* at 145. The appellate court held that the officer's "explanation did not amount to coercion or misrepresentation of authority because he had probable cause and accurately described to [the defendant] what would occur if a warrant were sought." *Id.*

The State argues that like the officer in *Miller*, the trooper here did not misrepresent his authority because he had probable cause to compel a blood draw under section 316.1933(1)(a), Florida Statutes (2016). This statute requires a blood draw (which may be forcibly taken) if an officer has probable cause to believe a motorist under the influence of alcoholic beverages, a chemical substance, or a controlled substance, has caused death or serious bodily injury. Further, being under the influence of alcohol does not necessarily require intoxication. *See State v. Kliphouse*, 771 So. 2d 16, 21 (Fla. 4th DCA 2000). Evidence that a driver was drinking coupled with evidence that the driver caused a serious or fatal accident suffices for probable cause to compel a blood draw under section 316.1933(1). *State v. Cesaretti*, 632 So. 2d 1105, 1106 (Fla. 4th DCA 1994).

In this case, the trial court found that the sergeant and the trooper both observed Acevedo with bloodshot, glassy eyes. The trooper also testified that he smelled a strong odor of alcohol coming from Acevedo. These facts provided sufficient probable cause to believe that Acevedo was under the influence.

The trial court also found that the odor of alcohol was insufficient, absent evidence of slurred speech and field sobriety exercises. This

4

conclusion conflicts with controlling law. *See State v. Catt*, 839 So. 2d 757, 759-60 (Fla. 2d DCA 2003); *Gerlitz v. State*, 725 So. 2d 393, 394-95 (Fla. 4th DCA 1998); *Cesaretti*, 632 So. 2d at 1106. This conclusion also conflicts with the testimony that the officers observed Acevedo's glassy eyes.

Based on these facts, even if Acevedo had not voluntarily consented to the blood draw, the officer had probable cause to coerce the blood draw. As a result, the trial court erred when it granted Acevedo's motion to suppress the blood draw.

### ii. The Warrant

Next, the State argues the trial court also erred in suppressing evidence seized under the search warrant for Acevedo's vehicle. We agree and reverse.

The trial court concluded the judge who had issued the search warrant had abused his discretion in issuing the warrant for two reasons. First, the trial court found that the affidavit in support of the warrant request did not show substantial evidence that the driver was under the influence of alcohol. Second, the trial court found that the affidavit did not establish the required nexus that evidence relevant to probable criminality likely would be found in the place searched. The trial court found it significant that the affidavit described no evidence that Acevedo had been driving recklessly, or that a rearend collision created a presumption of impairment or reckless driving.

To issue a search warrant, the issuing judge must find proof of two elements: (1) the commission element, that a particular person committed a crime; and (2) the nexus element, that relevant evidence of probable criminality is likely to be found in the place searched. *State v. Abbey*, 28 So. 3d 208, 211 (Fla. 4th DCA 2010) (citing *State v. Vanderhors*, 927 So. 2d 1011, 1013 (Fla. 2d DCA 2006)).

We conclude that the affidavit presented to the judge who had issued the search warrant sufficiently alleged probable cause that Acevedo had committed DUI manslaughter and vehicular homicide.

The crime of DUI manslaughter requires "proof that the operation of a vehicle by a person under the influence caused the death of another." *State v. May*, 670 So. 2d 1002, 1004 (Fla. 2d DCA 1996) (citing *Magaw v. State*, 537 So. 2d 566-67 (Fla. 1989)). So, the State did not need to establish that Acevedo was driving recklessly; only that, while under the

5

influence, he was driving a vehicle which caused the death of another. *See May*, 670 So. 2d at 1004 ("Reckless driving is not an element of DUI manslaughter; the state need only prove simple negligence in the operation of the vehicle."). The facts contained in the affidavit in support of the warrant request were more than sufficient for the issuing judge to find probable cause that Acevedo committed DUI manslaughter. So, the commission element was satisfied.

The nexus element was satisfied as well. The trial court determined the State did not need evidence from Acevedo's vehicle to prove the driver's identity. But the affidavit in support of the warrant request stated the EDR would reveal multiple items of information that would provide more details at to the cause of the crash, including the speed at which Acevedo was traveling at the time of impact.

Thus, the trial court erred when it suppressed evidence seized pursuant to the search warrant. The commission element and nexus element were satisfied and, as a result, the issuing judge did not err when he issued the search warrant.

### C. Conclusion

The trial court's orders granting the motion to suppress the blood draw and evidence seized from the search warrant are reversed, and the case is remanded for further proceedings.

*Reversed and remanded.*

KLINGENSMITH, C.J., and CONNER, J., concur.

\*　　　\*　　　\*

**Not final until disposition of timely filed motion for rehearing.**

6