STATE OF INDIANA *v.* DEXTER SEYMOUR

[No. 1-1077A233. Filed August 23, 1978.]

*Theodore L. Sendak*, Attorney General of Indiana, *Elmer Lloyd Whitmer*, Deputy Attorney General, for appellant.

LYBROOK, P.J. — The State of Indiana (State) brings this appeal from a ruling by the trial court in favor of a "Motion to Discharge" made by the defendant Dexter Seymour at the conclusion of the State's presentation of evidence at Seymour's trial on the charge of Reckless Driving.[1] After hearing arguments on the motion, which was referred to as a "motion for directed verdict" on the docket entry, the trial court stated:

> "By the Court:   I do not believe the State has shown in any way, shape or form that the defendant has endangered anything. Therefore your motion will be sustained and the defendant will be found not guilty."

The State subsequently filed its Motion to Correct Errors on July 8, 1977, which motion was denied, and this appeal follows.

Our attention focuses first on the right of the State to appeal an adverse judgment in a criminal action, which is governed by IC 1971, 35-1-47-2, that is:

> "Appeal by state. — Appeals to the Supreme Court may be taken by the state in the following cases:
>
> First. From a judgment for the defendant, on quashing or setting aside an indictment or information, or sustaining a plea in abatement.
>
> Second. From an order or judgment for the defendant, upon his motion for discharge because of delay of his trial not caused by his act, or upon his plea of former jeopardy, presented and ruled upon prior to trial.
>
> Third. From a judgment of the court arresting judgment.

---

1.   IC 1971, 9-4-1-54(c).

Fourth. *Upon a question reserved by the state.*" (Burns Code Ed.). (Emphasis added).

Where the State seeks to appeal a reserved question of law under the fourth clause of IC 35-1-47-2, the provisions of another statute, IC 35-1-43-2, become applicable:

"Appeal by state-Exceptions — Reserved questions — Bills of Exceptions. — The prosecuting attorney may except to any decision of the court during the prosecution of any cause, and reserve the point of law for the decision of the Supreme Court. The bill of exceptions must state clearly so much of the record and proceedings as may be necessary for a fair statement of the question reserved. In case of the acquittal of the defendant, the prosecuting attorney may take the reserved case to the Supreme Court upon an appeal at any time within one year .... The Supreme Court is not authorized to reverse the judgment upon such appeal, but only to pronounce an opinion upon the correctness of the decision of the trial court. The opinion of the Supreme Court shall be binding upon the inferior court and shall be a uniform rule of decision therein. When the decision of the trial court is decided to be erroneous, the appellee must pay the costs of the appeal." (Burns Code Ed.).[2]

In *State v. Cox* (1973), 156 Ind. App. 548, 297 N.E.2d 920, this court held that formal exceptions have been rendered unnecessary in criminal cases where the State is appealing a reserved question, according to Criminal Rule 6 of the Indiana Rules of Procedure. In *Cox*, the court stated that a motion to correct errors is a proper vehicle for appellate review of an adverse ruling on a reserved question.

Next, we note that Seymour's motion, which was variously referred to as a "Motion for Discharge" and as a "Motion for Directed Verdict", was in effect a Motion for Involuntary Dismissal under TR. 41(B), which reads:

"(B) Involuntary dismissal: Effect thereof. *After the plaintiff or party with the burden of proof upon an issue, in an action tried by the court without a jury, has completed the presentation of his evidence thereon, the opposing party, without waiving his right to*

---

2. Indiana Rules of Procedure, Appellate Rule 4 (A,B) provides that such cases shall be taken either to the Supreme Court or the Indiana Court of Appeals. See also *State v. Lee* (1975), 164 Ind. App. 395, 331 N.E.2d 50.

*offer evidence in the event the motion is not granted, may move for a dismissal on the ground that considering all the evidence and reasonable inferences therefrom in favor of the party to whom the motion is directed, to be true, there is no substantial evidence of probative value to sustain the material allegations of the party against whom the motion is directed.* The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff or party with the burden of proof, the court, when requested at the time of the motion by either party shall make findings if, and as required by Rule 52(A). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision or subdivison (E) of this rule and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, operates as an adjudication upon the merits." (Emphasis added).

This court has previously held that TR. 41(B) is applicable to criminal trials and provides the mechanism for a "directed finding" in a trial to the court by permitting a motion for involuntary dismissal based upon failure of proof. *Pinkston v. State* (1975), 163 Ind. App. 633, 325 N.E.2d 497.

The sole issue presented for our review under TR. 41(B) is whether the trial court's decision was contrary to law based upon the evidence before the trial court.

The trial court, in ruling on a motion for dismissal or one for a judgment on the evidence (directed verdict), must consider all of the evidence and reasonable inferences in favor of the party against whom the motion is directed to be true, and to determine if there is substantial evidence of probative value to sustain the material allegations of the party against whom the motion is directed. *Clark v. Melody Bar, Inc.* (1971), 149 Ind. App. 245, 271 N.E.2d 481. A directed verdict is only proper where there is a total absence of evidence on some essential issue required to convict, or where the evidence is without conflict and susceptible to only one inference in favor of the accused. To avoid a directed verdict, the State merely has to make out a *prima facie* case. *State v. Overmyer* (1973), 155 Ind. App. 689, 294 N.E.2d 172.

The facts in evidence before the trial court show that Dexter Seymour

was charged with the offense of Reckless Driving on January 14, 1977. Seymour was identified by an Indiana State Police Officer who observed him operating a vehicle "at a higher than normal rate of speed" along County Road 200 West in Hancock County. Seymour was also shown to have disregarded stop signs at the intersection of County Road 300 North and County Road 200 West, slowing his vehicle somewhat only after he passed through the intersection.

The State Policeman testified that he pursued the other vehicle at the speed of 55 miles per hour, but was unable to catch Seymour, and was apprehensive of increasing his own speed because the roadway was "ice and snow-covered, wet, slick and hazardous". The officer stated that he pursued the other vehicle with his red lights and siren in operation for a distance of one-fourth to one-half mile before the other driver halted. Seymour was identified to be the driver of the other vehicle.

Seymour was charged with the offense of Reckless Driving under IC 1971, 9-4-1-54(c) which reads:

> "(c) Reckless driving. *Any person who drives a vehicle with reckless disregard for the safety, property or rights of others shall be guilty of the offense of reckless driving.* Any person convicted of reckless driving shall be punished by a fine of not less than ten dollars [$10.00] nor more than five hundred dollars [$500.00], or by imprisonment for a determinate period of not less than five [5] days nor more than six [6] months, or by both fine and imprisonment. Any person convicted of a violation of the offense described in clause (7) of this subsection set out below shall also have his license suspended for not less than thirty [30] days nor more than one [1] year.
>
> The offense of reckless driving, as defined in this section, may be based depending upon the circumstances on the following enumerated acts and also on other acts which are not here enumerated but are not excluded and may be within the definition of the offense: (1) *driving at such an unreasonably high rate of speed, or at such an unreasonably low rate of speed, under the circumstances, as to endanger the safety or the property of others*, or as to block the proper flow of traffic; (2) passing or attempting to pass another vehicle from the rear while on a slope or on a curve where vision ahead is obstructed for a distance of less than five hundred [500] feet ahead; (3) driving in and out of a line of traffic, except as permitted elsewhere in the laws of this state; (4) speeding up or refusing to give half of the roadway to a driver overtaking

and desiring to pass; (5) failing to dim bright or blinding lights when meeting another vehicle or pedestrian; (6) driving recklessly against another person or against another car or property of another; (7) driving with reckless disregard for the safety, property or rights of others on the private property of another person, or any public property, with a motor vehicle, which driving results in damage to that property; or (8) *driving in any other specified manner in which the driver is heedless of probable injury to the safety, the property or the rights of others...*" (Burns Code Ed.). (Emphasis added).

The State asserts that the statute does not require any personal injury or damage to property by a driver to commit the offense, but only that the driving be done with reckless disregard for the safety, property or rights of others or heedless of *probable* injury to the safety, the property, or the rights of others. We agree.

While the trial court held that the State failed to show that Seymour "endangered anything", the record establishes that:

(1) Seymour was observed driving through an intersection, failing to obey the posted stop signs.

(2) Seymour was driving "at a higher than normal rate of speed" both prior to and subsequent to his passing through the intersection.

(3) The roadway travelled by Seymour's auto was lined by fences about 10 feet from the roadway, and there were farmhouses on either side.

(4) The State Policeman was approaching the intersection in his State-owned vehicle at the time Seymour passed through the intersection without slowing down or stopping.

(5) Seymour accelerated and was pulling away from the pursuing police officer driving the maximum speed limit, who was attempting to overtake him on ice and snow-covered roads which were described as "slick and hazardous."

From the above facts, reasonable inferences can be made that Seymour was guilty of speeding, failing to stop at a stop sign, and driving at speeds greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, in violation of IC 1971, 9-4-1-57 and IC 9-4-1-110(c), all in reckless disregard for the safety, property or rights of others.

While the trial court may elect to disregard any part or all of the evidence set forth in the testimony offered by the State in making its final determination, the court is required to accept as true all the evidence and reasonable inferences therefrom which favor the State's allegations when considering a motion for involuntary dismissal or judgment on the evidence. This the trial court erroneously failed to do.

We therefore are constrained to hold that the decision of the trial court was contrary to law.

Appeal sustained.

Robertson and Young, JJ., concur.

NOTE—Reported at 379 N.E.2d 535.