**Garrack JACKSON, Appellant–
Defendant Below,**

v.

**STATE of Indiana, Appellee–
Plaintiff Below.**

**No. 49A02–9011–CR–686.**

Court of Appeals of Indiana,
Third District.

Aug. 13, 1991.

Steven R. Eichholtz, Mears Tucker & Eichholtz, Indianapolis, for appellant-defendant below.

Linley E. Pearson, Atty. Gen., Sue A. Bradley, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff below.

STATON, Judge.

Garrack Jackson appeals his convictions for resisting law enforcement,[1] a Class A misdemeanor, refusing to provide identification,[2] a Class C misdemeanor, and for reckless driving,[3] a Class B misdemeanor. Jackson presents this court with the sole

1. IND.CODE 35–44–3–3(a)(1) (1988).

2. IC 34–4–32–3.

issue of whether his convictions are supported by sufficient evidence.

Affirmed in part, reversed in part.

While patrolling in his marked squad car in the early morning hours of August 25, 1989, Indianapolis Police Officer Brian Moore observed an individual wearing a leather jacket and dark blue pants drive a burgundy-colored motorcycle on Keystone Avenue. After the motorcyclist skidded in a semi-circle in the middle of the street, Moore called for assistance to stop the vehicle and continued to observe the actions of the operator. Moore saw the motorcycle pull into the yard at 54 North Keystone Avenue, spin its rear tires, then travel west toward an alley. At that point, Moore pursued the vehicle, which was traveling approximately 45 miles per hour, but lost sight of the motorcyclist who turned, without stopping, onto Washington Street.

Moore then returned to 54 North Keystone, where he saw the driver of the motorcycle walking south from that address. Moore approached the individual and asked him where he lived. The man replied that he lived at 54 North Keystone. After another police officer arrived at the scene, Moore asked the residents of the address if the suspect owned a burgundy motorcycle. Moore noticed the suspect signal to the people inside the house and led him away from the house. Moore asked the suspect for his name a total of four times, but the man refused to reply. After calling in for registration information on the motorcycle, Moore learned that the individual was Garrack Jackson.

Moore placed Jackson under arrest and led him to the squad car, where Jackson was searched and handcuffed. The search produced a key that fit the motorcycle ignition and started the vehicle. Initially, Jackson was cooperative, sitting in the back seat of the police car answering questions while Moore sat in the front seat completing an arrest report. Ultimately, however, Jackson became belligerent, protesting his arrest. Jackson twice lunged forward,

3. IC 9–4–1–56.1(1).

startling Moore. Moore located his nightstick and attempted to restrain Jackson, who raised his feet to avoid being struck with the nightstick. Jackson struck Moore in the neck and shoulder while Moore and another officer attempted to restrain him.

There are few rules of law in Indiana more firmly established than our standard for reviewing the sufficiency of the evidence: we are constrained to consider only that evidence most favorable to the State, together with all reasonable and logical inferences to be drawn therefrom. We may not independently weigh evidence or assess witness credibility. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be disturbed. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672. Jackson asks this court to find that the evidence was insufficient on each of his three convictions. We will begin our review with his conviction for reckless driving.

The reckless driving statute provides in relevant part:

A person operating a vehicle who recklessly:

(1) Drives at such an unreasonably high rate of speed, or at such an unreasonably low rate of speed, under the circumstances, as to endanger the safety or the property of others, or as to block the proper flow of traffic;

\* \* \* \* \* \*

commits a class B misdemeanor[.]

IC 9–4–1–56.1.

■ Although Jackson admits to being the individual operating the motorcycle on the morning in question, he contends the evidence is devoid of any proof that, under the circumstances, his rate of speed endangered the safety of others, or blocked the proper flow of traffic. We agree.

Officer Moore testified that he observed Jackson operate his motorcycle in the following manner:

"The driver of that motorcycle did a semi-circle skid in the middle of Keystone Avenue."

"I observed the motorcycle pull up into the yard between 54 North Keystone and the house just south of that. The motorcycle began to spin its rear tire, causing the ground to fly out from behind the motorcycle, while it remained stationary."

"I saw the motorcycle proceeding southbound in the alley toward Washington Street at a rather high rate of speed. I'd say about 45 miles an hour. And he made an eastbound, which would be a left turn, onto U.S. 40 at about 20 miles an hour without stopping...."

Record, pp. 48–51. While the record reveals driving practices that could amount to violations of the motor vehicle code, *see* IC 9–4–1–33, IC 9–4–1–57, the record is utterly bereft of any indication, either from direct or circumstantial evidence, that Jackson endangered the safety or property of another.

■ The common denominator of convictions upheld under the reckless driving statute is the endangerment presented by the operator of a motor vehicle to the safety or property of another. *See, e.g., Todd v. State* (1991), Ind.App., 566 N.E.2d 67 (witness testified he felt endangered by the speed and proximity of defendant's truck, which "fish-tailed" upon entering a shopping center parking lot and sped across the lot as customers entered and exited businesses open at that hour); *Magee v. State* (1988), Ind.App., 523 N.E.2d 432 (motorcyclist drove 40 miles over the speed limit, drove through two stop signs, popped a "wheelie" for twenty feet, and would not have been able to stop suddenly if he was required to do so; defendant admitted that he drove his motorcycle even though he was aware that his clutch was inoperable); *State v. Seymour* (1978), 177 Ind.App. 341, 379 N.E.2d 535 (improper for court to grant defendant's motion for discharge at the end of the State's evidence where defendant failed to stop at a stop sign, exceeded the speed limit on slick and hazardous roads, and failed to slow down at a stop sign when a state policeman approached the intersection); *Halligan v. State* (1978), 176 Ind.App. 463, 375 N.E.2d 1151 (after motor-

ist backed into defendant's car at a stop light, defendant went off the road to pull alongside of the motorist, then chased the motorist at speeds of 85 to 95 miles an hour).

■ Officer Moore testified that the pavement was clear and dry, and there is no indication that any other motorist or pedestrian was in the vicinity at 1:00 on the morning of August 25. As for endangerment to property, the evidence indicated that Jackson drove his motorcycle through the mud in his own yard, not the property of another. The State contends that the elements of the statute were satisfied by "evidence that Defendant was traveling at such a high rate of speed that the policeman was unable to follow him through the alley." Appellee's Brief, p. 8. This alone does not fulfill the requirements of the statute. The failure to adhere to the speed limit does not necessarily constitute recklessness. *Taylor v. State* (1983), Ind.App., 457 N.E.2d 594. Considering the circumstances surrounding Jackson's conduct, there is not sufficient evidence of probative value to prove beyond a reasonable doubt that he drove at such an unreasonably high rate of speed as to endanger the safety or the property of others. Jackson's conviction for reckless driving is, therefore, reversed.

■ Turning now to Jackson's conviction for refusing to reveal his identity, the pertinent statutory provision states:

A person who knowingly or intentionally refuses to provide either his:

(1) Name, address, and date of birth; or

(2) Driver's license, if in his possession; to a law enforcement officer who has stopped the person for an infraction or ordinance violation commits a class C misdemeanor.

IC 34–4–32–2.

Jackson submits that there is no evidence to support the finding that Officer Moore stopped Jackson for a violation of an ordinance or an infraction. The record, however, belies this assertion. Officer Moore testified that he stopped Jackson "cause at this point he was a suspect of a possible vandalism and also a reckless ... for reckless driving. For pulling out onto U.S. 40, I intended to conduct a traffic stop, is what my initial intentions were when I started to follow him." Record, p. 53. Moore described Jackson's purported failure to completely stop at the intersection and the high rate of speed at which the motorcycle was traveling. Considering the evidence favorable to the verdict, it is logical to infer that Moore stopped Jackson for failing to obey a traffic control sign or for speeding, or both. This conviction is supported by sufficient evidence.

■ Lastly, Jackson contends that a finding of guilt on the resisting law enforcement charge is inconsistent with his acquittal on the charge of battery on a police officer, claiming the facts and testimony relied upon by the State to prove the charge of battery are the same as those used to support the charge of resisting. We disagree. The crime of resisting law enforcement provides in part:

(a) A person who knowingly or intentionally:

(1) Forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer;

\* \* \* \* \* \*

commits resisting law enforcement, a Class A misdemeanor[.]

IC 35–44–3–3.

The crime of battery against a law enforcement officer is defined as follows:

A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is:

(1) A Class A misdemeanor ... if it is committed against a law enforcement officer or against a person summoned and directed by the officer while the officer is engaged in the execution of his official duty[.]

IC 35–42–2–1.

■ Our supreme court does not demand perfect logical consistency in ver-

dicts; only extremely contradictory and irreconcilable verdicts warrant corrective action. *Hoskins v. State* (1990), Ind., 563 N.E.2d 571. Moreover, jury verdicts do not have to be consistent in cases where one criminal transaction gives rise to criminal liability for separate and distinct offenses. *Douglas v. State* (1982), Ind., 441 N.E.2d 957. A verdict may be inconsistent or even illogical, but nevertheless be permissible if it is supported by sufficient evidence. *Totten v. State* (1985), Ind., 486 N.E.2d 519.

It is apparent from a review of the two statutes in issue that the elements of the offenses are not identical. The crime of battery requires the knowing or intentional *touching* of another person, whereas the resisting charge could be sustained on mere interference or obstruction of an arrest without any physical contact with the arresting officer. The jury could have properly concluded that, because of his protestations and thrashing about in the back seat of the squad car, Jackson interfered or obstructed with the arrest. Jackson's conviction for resisting is supported by sufficient evidence of probative value, while the jury could have found that Jackson raised his feet to keep Officer Moore from hitting him, precluding a conviction on the battery charge. The verdicts on the two offenses are not inconsistent nor illogical.

Jackson's conviction for reckless driving is reversed. His convictions for refusing to reveal his identity and for resisting law enforcement are affirmed.

BUCHANAN and ROBERTSON, JJ., concur.