

FILED

Mar 26 2015, 10:23 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

G. Allen Lidy
Roscoe Stovall, Jr., & Associates
Mooresville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Marvin Crussel, *Appellant-Defendant,* | March 26, 2015 |
| | Court of Appeals Cause No. 16A01-1407-CR-304 |
| v. | Appeal from the Decatur Superior Court |
| State of Indiana, *Appellee-Plaintiff.* | Lower Court Cause No. 16D01-1310-CM-698 |
| | The Honorable Matthew D. Bailey, Judge |

**Pyle, Judge.**

# Statement of the Case

Marvin Crussel ("Crussel") appeals, following a bench trial, his conviction for Class B misdemeanor reckless driving.[1] Crussel concedes that he drove at an unreasonably high rate of speed but argues that we should reverse his conviction because the evidence presented was insufficient to show endangerment. Concluding that the trial court, acting as factfinder, could have reasonably inferred that Crussel's act of driving ninety-one miles per hour in a fifty-five mile-per-hour zone at around 10:30 p.m. in the dark of night on a portion of a country road that had houses and cross streets endangered the safety and property of others, we affirm his conviction.

We affirm.

# Issue

Whether sufficient evidence supports Crussel's conviction.

# Facts

During the evening of October 16, 2013, Decatur County Sheriff's Deputy Rob Goodfellow ("Deputy Goodfellow") was parked, in his marked police car, alongside and perpendicular to County Road 1100 South. The deputy was parked on a portion of the county road west of Westport. Main Street in

---

[1] IND. CODE § 9-21-8-52(a)(1)(A). We note that this statute was amended, effective July 1, 2015, and that the amendment was to a different subsection. Because Crussel committed his offense in 2013, we will apply the statute in effect at that time.

Westport turns into County Road 1100 South. This county road is "fairly straight" but also has "some hills in it." (Tr. 6, 7). The portion of County Road 1100 South where the deputy parked was located in a "rural" part of Decatur County, but there were houses present and there were three roads intersecting the county road. These three roads had two-way stop signs, while County Road 1100 South had no stop signs.

[5] As the deputy was parked along the county road, it was "dark" outside, there was "[v]ery light traffic[,]" and "there was no rain and it wasn't snowing." (Tr. 6). At around 10:39 p.m., Deputy Goodfellow saw a car—later identified as Crussel's car—that was traveling westbound on County Road 1100 South from the direction of Westport. The deputy noted that the car "appeared to be at a higher rate of speed than fifty five" miles per hour, which was the speed limit for that road. (Tr. 8). Deputy Goodfellow saw Crussel's car from approximately one-half mile away on "a straight portion" of the road. (Tr. 7). There were no other cars traveling in that area at that time. The deputy had a radar device and clocked Crussel's speed at ninety-one miles per hour. Deputy Goodfellow then activated his lights and stopped Crussel.

[6] Thereafter, the State charged Crussel with Class B misdemeanor reckless driving and speeding, a Class C infraction. The trial court held a bench trial on May 5, 2014. Deputy Goodfellow testified to the facts above. On cross examination, the deputy confirmed that there were no pedestrians, bicyclists, or schools in the area. After the State rested, Crussel moved for a directed verdict, arguing that, under the circumstances presented, the State had failed to present

evidence on the element of endangerment of property or people. The State argued that "evidence of the extreme speed would constitute evidence in and of itself of endangerment to the safety and property of others." (Tr. 17). The trial court denied Crussel's motion.

[7] Thereafter, Crussel testified that he was going from home to work when the deputy pulled him over for speeding. Additionally, he testified that the road condition was "dry[,]" that there was "no fog[,]" and that he could see clearly that night. (Tr. 21). Crussel also testified that he had lived in the area for thirteen years and that his car was generally in an operational condition.

[8] When presenting its closing argument to the trial court, the State cited to *Taylor v. State*, 457 N.E.2d 594 (Ind. Ct. App. 1983), to support of its argument that "speed alone can support a reckless driving conviction." (Tr. 23). Crussel, on the other hand, cited to *Jackson v. State*, 576 N.E.2d 607 (Ind. Ct. App. 1991), to support his argument that there was insufficient evidence of endangerment to support a conviction for reckless driving. The trial court took the matter under advisement to review the parties' cases.

[9] Subsequently, on May 13, 2014, the trial court entered a written order, in which it discussed the cases submitted by the parties and determined that "Crussel's operation of his vehicle at 91 miles per hour in a 55 miles per hour speed zone was reckless and endangered the safety and property of others." (App. 10). The trial court found Crussel guilty of the reckless driving and speeding, merged

the speeding infraction into the reckless driving conviction, and imposed a $100.00 fine and court costs. Crussel now appeals his conviction.

# Decision

Crussel argues that the evidence was insufficient to support his Class B misdemeanor reckless driving conviction.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted) (emphasis in original).

To sustain Crussel's conviction for Class B misdemeanor reckless driving, the State was required to prove beyond a reasonable doubt that Crussel "operate[d] a motor vehicle and . . . recklessly . . . dr[ove] at such an unreasonably high rate of speed . . . under the circumstances as to . . . endanger the safety or property of others[.]" I.C. § 9-21-8-52(a)(1)(A). The reckless driving statute does not

require a showing of personal injury or damage to property by a driver in order to commit the offense. *See State v. Seymour*, 379 N.E.2d 535, 346 (Ind. Ct. App. 1978) (analyzing a different subsection of prior version of the reckless driving statute).

[13] Crussel does not challenge the elements that he recklessly drove his car at an unreasonably high rate of speed. Indeed, he acknowledges that he was driving "at a high rate of speed well in excess of the speed limits." (Crussel's Br. 6). He, however, contends that "driving 91 miles per hour in a 55 mile per hour zone does not support a finding that he endangered the property or safety of others." (Crussel's Br. 8). He contends that this Court should reverse his conviction because the "State did not present any evidence of endangerment other than excessive speed." (Crussel's Br. 8). In support of his argument, he cites to *Jackson*, in which another panel of this Court reversed the defendant's reckless driving conviction based on insufficient evidence of endangerment.

[14] The State, as the prosecutor did below, cites to *Taylor* to support its argument that "driving at an unreasonably high speed may suffice to support a conviction" for reckless driving. (State's Br. 4). The State also asserts that, under the circumstances presented, the trial court could have concluded that Crussel's unreasonably high speed endangered the safety and property of others and that Crussel's arguments are merely a request to reweigh the evidence.

[15] In *Taylor*, the defendant was convicted of reckless homicide after he drove seventy miles per hour in a thirty mile-per-hour zone, ran a stop sign, and

collided with another car, killing the two people inside. *Taylor*, 457 N.E.2d at 596-97. On appeal, Taylor challenged the sufficiency of the evidence supporting his conviction. *Id.* at 597. Another panel of this Court reviewed the reckless driving statute when considering whether the defendant acted recklessly when he drove forty miles over the speed limit. *Id.* at 598. When discussing the reckless driving statute, the *Taylor* Court stated:

> Initially, it would appear the Reckless Driving statute is of minimal assistance in resolving the issue before us, given the use therein of the word "recklessly." We believe, however, that the adverb "recklessly" was employed to lend flexibility to the operation of the statute. As we interpret the statute, Reckless Driving may be based on any one of the enumerated acts, but proof thereof creates a presumption of recklessness which the defendant may rebut. Therefore, in certain circumstances, operating a motor vehicle at an "unreasonably high rate of speed" may be sufficient to support a conviction of Reckless Driving.
>
> Although the legislature elected not to define "unreasonably high rate of speed," it is clear that driving forty miles per hour in excess of the speed limit is unreasonable and reckless. The dangerousness of Taylor's speeding vehicle was exacerbated by the fact that the pavement was wet and by the fact that he was unfamiliar with the area.
>
> * * * * *
>
> The circumstances of this case reveal the dangerous nature of Taylor's actions. Speed limits are regulated for the protection of public safety and are assessed with regard to particular road conditions. Failure to adhere to the speed limit, however, does

not necessarily constitute recklessness. A slight deviation from the limit does not thereby create a great risk of danger and, alternatively, it is conceivable that some violations are due to inadvertence. We cannot state that either is true in Taylor's case, given the substantial differential between the speed of his vehicle and the speed limit.

*Id.* The *Taylor* Court concluded that, in the "absence of any rebuttal evidence," the evidence was sufficient to show that Taylor had acted recklessly and to support his conviction. *Id.*

[16] In *Jackson*, the defendant, at 1:00 a.m., skidded in a semi-circle on his motorcycle in the middle of North Keystone Avenue in Indianapolis, spun his rear tires in his own yard, and then drove approximately forty-five miles per hour toward an alley. *Jackson*, 576 N.E.2d at 608. Jackson was convicted of Class B misdemeanor reckless driving and appealed the sufficiency of his conviction. *Id.* at 608-09. On appeal, another panel of this Court noted that the evidence showed that the pavement was dry and there was no indication that there were any other motorist or pedestrian in the area at that early morning hour. *Id.* at 610. We did not, however, indicate what the speed limit was or how much the defendant had exceeded the speed limit. We held that, considering the circumstances surrounding Jackson's conduct, there was "not sufficient evidence of probative value to prove beyond a reasonable doubt that he drove at such an unreasonably high rate of speed so as to endanger the safety or property of others[,]" and we reversed his conviction for reckless driving. *Id.*

[17] After analyzing these cases, we note that neither one explicitly controls our analysis of whether there was sufficient evidence of endangerment to support Crussel's reckless driving conviction.[2] While the *Taylor* Court reviewed the reckless driving statute and concluded that, "in certain circumstances, operating a motor vehicle at an 'unreasonably high rate of speed' may be sufficient to support a conviction of Reckless Driving[,]" the main focus of its analysis was on the element of recklessness. *Taylor*, 457 N.E.2d at 598. Additionally, while the *Jackson* Court evaluated whether there was sufficient evidence of endangerment, its analysis did not involve a discussion of the defendant's speed, in conjunction with other circumstances, when making that determination.

[18] Instead, we focus on the language of the reckless driving statute and our standard of review as set forth by our Indiana Supreme Court. The statute at issue required that the State prove that Crussel operated a motor vehicle and "recklessly . . . dr[ove] at such an unreasonably high rate of speed . . . under the circumstances as to . . . endanger the safety or property of others[.]" I.C. § 9-21-8-52(a)(1)(A).

[19] Again, Crussel does not dispute that he drove recklessly at an unreasonably high rate of speed. Crussel asserts that the evidence was insufficient to support his reckless driving conviction, contending that the only evidence of

---

[2] We note that both *Jackson* and *Taylor* addressed a prior version of the reckless driving statute, Indiana Code § 9-4-1-56.1, but that the relevant language at issue in this case was contained in that version of the statute as well. *Compare* I.C. § 9-4-1-56.1 to I.C. § 9-21-8-52.

endangerment was his excessive speed. We agree, in part, with Crussel's assertion. We generally agree that a defendant's unreasonably high rate of speed, in and of itself, would not be the sole determining factor when analyzing whether the element of endangerment has been satisfied. Instead, a defendant's speed, in conjunction with the other attending "circumstances" surrounding a defendant's act of recklessly driving at an unreasonably high rate of speed, will serve to determine whether a defendant has endangered the safety or property of others. *See* I.C. § 9-21-8-52(a)(1)(A). We, however, disagree that the evidence was insufficient to support Crussel's conviction.

[20] Here, there was evidence regarding the attending "circumstances" under which Crussel recklessly drove at an unreasonably high rate of speed from which the trial court could have inferred that he endangered the safety or property of others. The evidence reveals that Deputy Goodfellow was parked alongside a portion of County Road 1100 South at 10:39 p.m. when he saw Crussel driving ninety-one miles per hour. Deputy Goodfellow saw Crussel's car from approximately one-half mile away on "a straight portion" of the county road. (Tr. 7). At the time the deputy stopped Crussel, it was dark, there was no rain or snow, and there were no other motorists, bicyclists, or pedestrians present. The part of the county road where the deputy saw Crussel driving was located in a "rural" part of Decatur County, but there were houses present and there were three roads intersecting the county road. Crussel testified that the road condition was "dry[,]" that there was "no fog[,]" and that he could see clearly

that night. (Tr. 21). Crussel also testified that he had lived in the area for thirteen years and that his car was generally in an operational condition.

Crussel points to certain circumstances and argues that they "clearly cut against a finding of endangerment[.]" (Crussel's Br. 6). However, the trial court, faced with the evidence of all the circumstances surrounding Crussel's speeding on the county road, weighed that evidence and determined that "Crussel's operation of his vehicle at 91 miles per hour in a 55 miles per hour speed zone was reckless and endangered the safety and property of others." (App. 10). Based on the evidence presented, it was reasonable for the trial court, as factfinder, to have drawn an inference that Crussel endangered the safety and property of others from the evidence that Crussel drove his car ninety-one miles per hour in a fifty-five mile-per-hour zone in the dark of night on a country road that had houses and cross streets in the area. *See Tin Thang v. State*, 10 N.E.3d 1256, 1260 (Ind. 2014) (explaining that "when determining whether the elements of an offense are proven beyond a reasonable doubt, a fact-finder may consider both the evidence *and the resulting reasonable inferences*") (emphasis in original). *See also Drane*, 867 N.E.2d at 146 (explaining that when we "must consider only the probative evidence and reasonable inferences *supporting* the verdict") (emphasis in original).

[21] Crussel's argument—which in essence challenges the significance applied to the evidence of the circumstances surrounding his act of recklessly driving at an unreasonably high rate of speed—is nothing more than an invitation to reweigh the evidence, which we will not do. *See id.* Because there was probative

evidence from which the factfinder could have found Crussel guilty beyond a reasonable doubt of Class B misdemeanor reckless driving, we affirm his conviction. *See id.* at 147 n.4 (stating that "appellate courts must affirm 'if the probative evidence and reasonable inferences drawn from that evidence *could* have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt'") (quoting *McHenry,* 820 N.E.2d 124, 126 (Ind. 2005) (quoting *Tobar v. State,* 740 N.E.2d 109, 112 (Ind. 2000)) (emphasis in original).

[22] Affirmed.

Barnes, J., and May, J., concur.