NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

KEITH GILBERT AMBACHER,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13119
Trial Court No. 3SW-17-00226 CR

O P I N I O N

No. 2737 — November 25, 2022

Appeal from the Superior Court, Third Judicial District, Seward, Charles T. Huguelet, Judge.

Appearances: Glenda Kerry, Law Office of Glenda J. Kerry, Girdwood, under contract with the Public Defender Agency, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Elizabeth T. Burke, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Wollenberg, Harbison, and Terrell, Judges.

Judge WOLLENBERG.

A jury found Keith Gilbert Ambacher guilty of first-degree failure to stop at the direction of a peace officer (felony eluding) and reckless driving.[1]  The trial court subsequently merged the two verdicts into a single conviction for first-degree failure to stop.

On appeal, Ambacher argues that there was insufficient evidence to establish that he committed the offense of reckless driving — which elevated his crime of failure to stop to a felony.  We agree with Ambacher that the evidence was insufficient to establish the crime of reckless driving, and we therefore reverse his conviction for first-degree failure to stop at the direction of a peace officer.  However, because the lesser included offense of second-degree failure to stop at the direction of a peace officer does not require proof of reckless driving, we remand for entry of a conviction and resentencing on this lesser offense.

Given our conclusion that there was insufficient evidence of reckless driving, we need not address Ambacher's arguments that the prosecutor misstated the law of reckless driving in his closing argument.

Ambacher also argues that the trial court erred in allowing a jury view during which the jury observed and listened to the patrol car lights and sirens.  Having reviewed the record, we conclude that the trial court did not abuse its discretion in allowing the jury view.

*Underlying facts*

Shortly after noon on October 15, 2017, a trooper observed a black pickup truck turn from the Seward Highway onto Nash Road in Seward.  October 15th was a clear, dry day, and it was a Sunday, with few cars on the road.  The trooper recognized

---

[1]    AS 28.35.182(a)(1) and AS 28.35.400, respectively.

the truck as one driven by Keith Ambacher, whom the trooper knew had a revoked driver's license. The trooper activated his lights, but Ambacher continued driving. The trooper then activated his siren. (A second officer followed, activating his own lights and sirens.)

The trooper testified that Ambacher was driving 54 miles per hour when he first activated his radar, but Ambacher then accelerated — ultimately driving at speeds of up to 80 miles per hour in the 55 mile-per-hour zone. As Ambacher navigated a long S-curve, the video from the trooper's patrol vehicle showed that the trooper slowed to speeds of 65 to 70 miles per hour while maintaining a similar speed to Ambacher. As Ambacher continued through the S-curve, Ambacher's left wheels briefly crossed the double yellow lines, and on the subsequent righthand curve, Ambacher's right wheels crossed the fog line. The trooper's video showed a pedestrian walking on the shoulder on the other side of the road and a single truck traveling in the opposite direction.

The trooper's video showed that, following the S-curve, the trooper's speed gradually accelerated to 80 miles per hour to keep up with Ambacher. Although Ambacher was clearly speeding, nothing in the video or the trooper's testimony indicated that Ambacher did not have full control of his vehicle, or that he endangered other people or property. They encountered no further cars on the road during the pursuit.

About a minute and a half into the pursuit, Ambacher slowed down and turned into Bay View Trailer Park without activating his turn signal, and he came to a full stop. The pursuit had covered 1.8 miles. Ambacher remained in the vehicle until the trooper removed him at gunpoint and arrested him.

Ambacher was charged with first-degree failure to stop at the direction of a peace officer and reckless driving.[2]

_____

[2] Ambacher was also separately cited for speeding and for the infraction of driving with

(continued...)

Ambacher testified at trial.  He admitted to speeding down Nash Road that day without a good reason, but maintained that he did not know that the trooper was following him and did not see the lights or hear the sirens.  He also admitted to crossing the lane lines, but he stated that he did not see any danger in doing so, since he believed he could have avoided a collision if he saw anyone coming.  He testified that he failed to signal his turn because he did not think there was anyone behind him, and he certainly would have signaled if he had known there was an officer behind him.  He denied attempting to outrun the police.

The jury found Ambacher guilty of first-degree failure to stop at the direction of a peace officer and reckless driving.  The trial court merged these verdicts into a single conviction for first-degree failure to stop.

*Why we conclude that there was insufficient evidence of reckless driving and thus, felony eluding*

Ambacher was convicted of first-degree failure to stop at the direction of a peace officer (*i.e.*, felony eluding).  A person commits first-degree failure to stop if, in relevant part, the person (1) commits second-degree failure to stop (*i.e.*, the person fails to stop at the direction of a peace officer as soon as practical and in a reasonably safe manner under the circumstances), and (2) simultaneously commits the offense of reckless driving.[3]

---

[2]  (...continued)
a revoked license.

[3]  AS 28.35.182(a)(1).  A person also commits first-degree failure to stop if the person fails to stop at the direction of a peace officer while committing vehicle theft, or if the person causes an accident or serious injury.  AS 28.35.182(a)(2)-(3).  Neither of those theories was at issue here.

Reckless driving is defined by statute as driving "in a manner that creates a substantial and unjustifiable risk of harm to a person or to property."[4] A "substantial and unjustifiable risk" is defined as "a risk of such a nature and degree that the conscious disregard of it or a failure to perceive it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."[5]

On appeal, Ambacher does not dispute that there was sufficient evidence to show that he knowingly failed to stop at the trooper's direction. Rather, he argues that the evidence presented at trial was insufficient to establish that he drove recklessly, and therefore insufficient to convict him of felony eluding. More specifically, he argues that the evidence failed to show that his driving created "a substantial and unjustifiable risk of harm" such that his disregard of the risk was "a gross deviation" from the standard of care a reasonable driver would observe.

When a defendant challenges the sufficiency of the evidence to support a criminal conviction, we view the evidence, and all reasonable inferences from that evidence, in the light most favorable to upholding the jury's verdict.[6] We then ask whether a reasonable juror could find that the State had proven the defendant's guilt beyond a reasonable doubt.[7]

Here, Ambacher's driving was directly captured on the trooper's patrol car video. Thus, the facts of Ambacher's driving were largely undisputed, and the central question was whether those facts constituted the crime of reckless driving. We have watched the video — which was repeatedly played for the jury at trial — and reviewed

---

[4] AS 28.35.400(a).

[5] *Id.*

[6] *Iyapana v. State*, 284 P.3d 841, 848-49 (Alaska App. 2012).

[7] *Id.*

the testimony. Having reviewed the record, and in particular the video, we conclude that — while the evidence certainly supports the conclusion that Ambacher committed traffic infractions — the evidence does not support the conclusion that Ambacher's driving was "a gross deviation" from the standard of care a reasonable driver would observe.[8]

Ambacher undoubtedly exceeded the speed limit, driving at speeds of up to 80 miles per hour in a 55 mile-per-hour zone. But it was a clear, dry day with few cars around. The S-curve Ambacher navigated was relatively gentle, and he slowed down to speeds of 65 to 70 miles per hour while he did so. Although Ambacher "cut corners" — *i.e.*, his wheels strayed slightly outside his lane on either side as he was navigating the road — he did not obstruct the oncoming lane of traffic. And he remained in his lane of travel thereafter, until he turned into the trailer park 1.8 miles after the pursuit began. Nothing in the video or the trooper's testimony suggested that Ambacher did not have full control of his vehicle or that he endangered other people or property.

Moreover, while the trooper estimated at trial that Ambacher made the final turn into Bay View Trailer Park at about 40 or 45 miles per hour, the video from his patrol vehicle shows the trooper slowing to 30 miles per hour as he made the turn — even while maintaining a steady distance from Ambacher. And after Ambacher turned into the trailer park, he stopped his vehicle and stayed in his car while the officer detained him.

We have previously held that a person need not actually endanger anyone in order to commit the crime of reckless driving.[9] But the legislative history of the felony

---

[8] To watch the patrol car video is to understand best why the driving in this case did not meet the legal standard for "reckless driving." The video is on file with the Appellate Clerk's Office.

[9] *State v. Comeau*, 758 P.2d 108, 116 (Alaska App. 1988).

eluding statute illustrates that the crime of reckless driving requires something beyond the conduct that occurred here.

As originally enacted in 1984, the crime of failure to stop at the direction of a peace officer encompassed what is today the base-level misdemeanor offense — *i.e.*, knowingly failing to stop a vehicle as soon as practical and in a reasonably safe manner under the circumstances when requested to do so by a peace officer.[10]  In 1998, the legislature added degrees to the statute, raising the offense from a misdemeanor to a felony under certain broad circumstances — *i.e.*, when the driver engaged in eluding was also "violat[ing] a traffic law" or "commit[ting] another crime."[11]  "Traffic law" was expansively defined to include all statutes or ordinances "governing the driving or movement of vehicles."[12]

Four years later, in 2002, the legislature changed course, narrowing the circumstances that elevate failure to stop to a felony out of concern that the felony offense was being overcharged.[13]  As the counsel to the House Judiciary Committee explained, the proposed amendment was intended to clarify that felony failure to stop "requires something above and beyond a basic traffic violation" — in particular, it

---

[10]  SLA 1984, ch. 66, § 1 (enacting AS 28.35.182).

[11]  SLA 1998, ch. 136, § 1.

[12]  Former AS 28.35.182 (1998) (defining "traffic law" by reference to AS 28.15.261).

[13]  *See, e.g.*, Audio of House Judiciary Comm., House Bill 381, testimony of Heather Nobrega, counsel to House Judiciary Comm., at 1:14:14 – 1:14:49 (Feb. 13, 2002).  (The times cited refer to the time stamps in the audio recordings of the committee hearings, and not to the time of day.)

requires a simultaneous violation of the reckless driving statute, which is itself a criminal offense.[14]

At that same hearing, a representative from the Department of Public Safety, Deputy Commissioner Del Smith, expressed concern that the existing felony eluding statute was being abused, and that "common sense" with respect to charging decisions "has not carried through in each and every case."[15] For example, Smith testified about a motorist who was charged with felony eluding after the motorist rapidly accelerated to 10 miles an hour over the speed limit in response to a police pursuit, made a left turn without a signal, and ultimately stopped after 1.25 miles — conduct similar to Ambacher's. Smith stated his belief that charging that driver with felony-level eluding was "very inappropriate."[16] Rather, Smith stated that the charge of felony eluding "is intended for the most egregious circumstances."[17]

---

[14] *Id.*

[15] *Id.* at 1:18:38 – 1:19:25 (testimony of Deputy Public Safety Comm'r Del Smith); *see also* Audio of Senate Judiciary Comm., House Bill 381, testimony of Heather Nobrega, counsel to House Judiciary Comm., at 3:14 – 3:40 (Apr. 17, 2002) (explaining that a representative from the Department of Public Safety had testified before the House Judiciary Committee that the current felony eluding law was being "abused by the police officers").

[16] Audio of House Judiciary Comm., House Bill 381, testimony of Deputy Public Safety Comm'r Del Smith, at 1:20:32 – 1:20:59 (Feb. 13, 2002).

[17] *Id.* at 1:23:56 – 1:24:01. Indeed, Assistant Attorney General Anne Carpeneti, on behalf of the Department of Law, agreed that the felony eluding statute was "too broad" as originally written and she thought it was a "good idea" to limit it. However, she expressed concern that limiting the aggravating circumstance only to the crime of "reckless driving" was going "too far in the opposite direction." The Department of Law therefore proposed additional aggravating circumstances. *Id.* at 1:25:12 – 1:26:50 (testimony of Assistant Attorney General Anne Carpeneti).

The legislature subsequently adopted "reckless driving" as a circumstance elevating misdemeanor eluding to a felony, along with the two other aggravating circumstances that exist today (eluding while (1) committing a vehicle theft, or (2) causing an accident or serious physical injury).[18]

In this case, Ambacher's speed was excessive.[19] But driving in excess of the speed limit — a traffic infraction for which Ambacher was separately convicted — is not necessarily sufficient to satisfy Alaska's reckless driving statute. Indeed, we have suggested that violating the speed limit, even by up to 20 miles per hour, is not alone sufficient to sustain a negligent driving conviction, which is a lesser included offense of reckless driving.[20]

---

[18] SLA 2002, ch. 93, § 1.

[19] *See* 2 Alaska Administrative Code (AAC) 90.310(a)(20) (assigning six demerit points for driving 20 or more miles per hour over the speed limit).

[20] *See Comeau v. State*, 758 P.2d 108, 115-16 (Alaska App. 1988); *Lajiness v. State*, 1997 WL 129084, at *1-2 (Alaska App. Mar. 19, 1997) (unpublished); AS 28.35.410(b). Some states have held that speeding alone is insufficient to constitute recklessness unless the speeding is grossly excessive or if there are additional circumstances that make the speeding particularly dangerous. *See, e.g.*, *Damoah v. State*, 189 So.3d 316, 320 (Fla. Dist. App. 2016) ("Speed alone does not constitute reckless conduct unless the speed is shown to be grossly excessive." (citation omitted)); *State v. Munoz*, 336 P.3d 424, 426 (N.M. App. 2014) ("[S]peeding alone is insufficient to constitute recklessness. . . . But speeding can constitute recklessness if the speeding created a danger for others and additional conduct establishes that a driver willfully disregarded the safety of others."). Other states have reckless driving statutes that are expressly predicated on exceeding the speed limit by a certain amount. *See, e.g.*, Va. Code Ann. § 46.2-862 ("A person is guilty of reckless driving who drives . . . (i) at a speed of 20 miles per hour or more in excess of the applicable maximum speed limit or (ii) in excess of 85 miles per hour regardless of the applicable maximum speed limit."); *see also* Conn. Gen. Stat. § 14-222 ("The operation of a motor vehicle . . . at a rate of speed greater than eighty-five miles per hour shall constitute [reckless driving]."); N.H. Rev. Stat. Ann. § 265:79 (defining reckless driving, in part, as "driv[ing] a vehicle at a speed of 100 miles

(continued...)

Rather, as we have previously noted, in order to commit the crime of reckless driving, a person's conduct must create a "substantial and unjustifiable risk of harm to a person or to property" and this risk must constitute "a *gross deviation* from the standard of conduct that a reasonable person would observe in the situation."[21] That is, the risk presented by an individual driver's conduct must be analyzed within the context of the circumstances in the case at hand, not in a generalized manner.

Here, there was no evidence that Ambacher was intoxicated, which we have recognized as *prima facie* evidence of recklessness.[22] He did not fail to stop at any traffic signals,[23] and while the wheels of his vehicle briefly crossed over the lane lines, he did

---

[20] (...continued)
per hour or greater").

[21] AS 28.35.400 (emphasis added).

[22] *See Comeau*, 758 P.2d at 115.

[23] *See, e.g.*, *Lovett v. State*, 2016 WL 362779, at *1 (Alaska App. Jan. 27, 2016) (unpublished) (finding sufficient evidence of reckless driving when the defendant sped through icy and snowy roads, drove through two stop signs, and had a blood alcohol content of 0.197 percent); *Williams v. State*, 2015 WL 4599554, at *1-2 (Alaska App. July 29, 2015) (unpublished) (finding sufficient evidence of reckless driving where, during a police pursuit that lasted approximately thirty minutes, the defendant swerved from lane to lane, drove through a trailer park in the opposite lane of travel, sped on the highway in icy conditions (forcing cars to pull over), and ultimately drove through a red light); *Snider v. State*, 2018 WL 4908355, at *1-2 (Alaska App. Oct. 10, 2018) (unpublished) (finding sufficient evidence of reckless driving where, in addition to driving 50 miles per hour over the speed limit on a winding, hilly road, the defendant ran a stop sign, repeatedly crossed and swerved over the center line, and eventually drove along active railroad tracks and then down the railway embankment into a marsh).

not engage in any particularly dangerous maneuvers in traffic.[24]  He was not speeding in hazardous road conditions,[25] and he stopped after a minute and a half.

Other courts considering similar or more egregious conduct have concluded that the defendant was not guilty of reckless driving.  In *Luzardo v. State*, the Florida District Court of Appeal considered a case in which a driver involved in a fatal collision was charged with vehicular homicide.[26]  Like Alaska's felony eluding statute, Florida's vehicular homicide statute requires proof of the elements of reckless driving.[27]  The Florida court concluded that driving 84 miles per hour in a 55 mile-per-hour zone on a "narrow, straight, two-lane road" in a rural area on a clear, sunny day with light traffic

---

[24]  *See, e.g.*, *Calder v. State*, 619 P.2d 1026, 1027 (Alaska App. 1980) (defendant convicted of reckless driving for making a sudden left turn from the right lane and spinning out of control on icy patches in a parking lot); *Newsom v. State*, 199 P.3d 1181, 1188 (Alaska App. 2009) (finding sufficient evidence of reckless driving where the defendant accelerated, changed lanes quickly, dangerously darted between adjacent cars, and made a right turn so abruptly that his tires went over the curb in the process); *Griffeth v. State*, 2014 WL 895221, at *1 (Alaska App. Mar. 5, 2014) (unpublished) (defendant convicted of reckless driving after he unsafely passed two drivers on the Seward Highway in his semi-truck, causing the drivers to swerve or drive onto the shoulder); *Tok O v. Anchorage*, 2004 WL 2173379, at *1-2 (Alaska App. Sept. 29, 2004) (unpublished) (finding sufficient evidence of reckless driving where the defendant drove against oncoming traffic in an effort to bypass traffic congestion, causing an oncoming vehicle to abruptly slow and get rear-ended); *Stites v. State*, 1987 WL 1357061, at *1 (Alaska App. Oct. 7, 1987) (unpublished) (defendant convicted of reckless driving after he sped in an attempt to elude an officer, used both lanes of traffic to negotiate turns in the road, then slammed on his brakes, skidding approximately 105 feet, before jumping from his vehicle and neglecting to place it in park, such that the vehicle crossed the oncoming traffic lane).

[25]  *See, e.g.*, *Lovett*, 2016 WL 362779, at *1; *Williams*, 2015 WL 4599554, at *1, 3.

[26]  *Luzardo v. State*, 147 So.3d 1083 (Fla. Dist. App. 2014).

[27]  *Id.* at 1085-86.

did not constitute reckless driving.[28] Florida courts have also found that driving 94 miles per hour in a 40 mile-per-hour zone was not reckless given the circumstances, but have affirmed convictions based on driving at least 82 miles per hour in a 40 mile-per-hour zone and 82 miles per hour in a 45 mile-per-hour zone where additional circumstances — other traffic, pedestrians, or the defendant rapidly changing lanes between cars — were present.[29]

The Tennessee Court of Criminal Appeals confronted similar evidence to this case in an unpublished decision in *State v. Mitchell*:

> [T]he Defendant was clocked going seventy-seven miles per hour when the posted speed limit was fifty miles per hour. The roadway was straight and flat. It was late at night, and he passed another vehicle. Shortly thereafter, he turned into his girlfriend's driveway. The primary evidence which could be considered as reckless driving was driving seventy-seven miles per hour.[30]

Comparing that evidence to cases in which Tennessee courts had affirmed reckless driving convictions — driving 120 miles per hour over a highway with hills and curves, driving 106 miles per hour and crashing into another vehicle, or passing four vehicles

---

[28] *Id.* at 1084, 1088-89.

[29] *Harris v. State*, 318 So.3d 645, 648-49 (Fla. Dist. App. 2021) (discussing *Natal v. State*, 278 So.3d 705, 706-08 (Fla. Dist. App. 2019), and *State v. Desange*, 294 So.3d 433, 436-39 (Fla. Dist. App. 2020)). The *Harris* court noted that "[a]lthough [the defendant's] excessive speed" — 94 miles per hour in a 40 mile-per-hour zone — "is clearly concerning and constitutes a civil infraction that is a moving violation, his excessive speed alone was insufficient to prove recklessness," especially in the absence of additional dangerous circumstances. *Id.* at 648-49.

[30] *State v. Mitchell*, 1997 WL 567913, at *7 (Tenn. Crim. App. Sept. 15, 1997) (unpublished).

and nearly forcing a fifth off the road — the court found that the evidence was insufficient to support the reckless driving conviction.[31]

Those courts that have affirmed reckless driving convictions in which the driver traveled at similar speeds to Ambacher have usually done so because of substantially more aggravated circumstances. For instance, in *State v. Agard*, the driver passed about six other vehicles, changed lanes twice to pass the other vehicles, swerved into an oncoming lane at a high speed, and disregarded two stop signs while driving 80 miles per hour in a 55 mile-per-hour zone.[32] In *Crussel v. State*, the driver "drove his car ninety-one miles per hour in a fifty-five mile-per-hour zone in the dark of night on a country road that had houses and cross streets in the area."[33] And in *Blevins v. Commonwealth*, the defendant drove aggressively and failed to control his truck on a rainy night with limited visibility, at speeds of up to 80 miles per hour, before causing a fatal accident.[34]

Putting aside the fact that Ambacher knowingly failed to stop for the trooper (an element of the offense he does not contest on appeal), the question is whether Ambacher's driving — *i.e.*, driving in excess of the speed limit by up to 25 miles per hour on a clear, dry day and partially straying into the other lane of traffic — created a "substantial and unjustifiable risk of harm to a person or to property" constituting "a gross deviation from the standard of conduct that a reasonable person would observe in

---

[31] *Id.* at *6-7 (citing cases).

[32] *State v. Agard*, 151 P.3d 802, 809 (Haw. 2007).

[33] *Crussel v. State*, 29 N.E.3d 746, 752 (Ind. App. 2015).

[34] *Blevins v. Commonwealth*, 762 S.E.2d 396, 400 (Va. App. 2014).

the situation."[35] We have reviewed the video ourselves, and even drawing all inferences in favor of the State, as we are required to do, we cannot conclude that Ambacher's driving was a gross deviation from a reasonable person's standard of conduct that went above and beyond basic traffic law violations.

We therefore conclude that there was insufficient evidence to support the conclusion that Ambacher was guilty of reckless driving. We reverse Ambacher's conviction for first-degree failure to stop at the direction of a peace officer (and the jury's verdict for reckless driving).

Given this resolution, we need not address Ambacher's arguments that the prosecutor misstated the law of reckless driving in his closing argument. However, we must address Ambacher's additional challenge to his conviction for failure to stop — *i.e.*, that the trial court erred in allowing a jury view of the patrol vehicle lights and sirens — to determine whether to remand this case to the superior court for entry of conviction for second-degree failure to stop (a lesser included offense of first-degree failure to stop that does not require proof of reckless driving) or to reverse Ambacher's conviction in its entirety and allow a new trial.

*Why we conclude that the trial court did not abuse its discretion in allowing a jury view of the patrol car lights and sirens*

Ambacher's remaining argument on appeal is that the trial court erred in allowing the jury to observe the lights and sirens on the pursuing trooper's patrol vehicle (and on a second patrol vehicle that was also involved in the traffic stop) in an alley behind the courthouse. On appeal, Ambacher calls this demonstration a "reenactment

---

[35] AS 28.35.400(a).

of the police pursuit" that was not substantially similar to the incident itself and that caused him unfair prejudice. We reject this argument.

Ambacher argued at trial that he did not see the lights or hear the sirens and therefore did not know that the officers wanted him to pull over. During the testimony of the respective officers at trial, the prosecutor asked that the jurors, judge, and counsel go outside and observe each officer activate the lights and sirens on his patrol vehicle. The prosecutor proposed that the jurors would first observe the vehicle lights and hear the sirens while the vehicle was stationary from twenty to thirty feet away for ten seconds. Second, the officer would drive toward the jurors down the alley with the siren and lights activated.

Ambacher did not object to the first part of the demonstration, but he did object to the second, arguing that it did not accurately reenact what occurred during the police pursuit. The trial court overruled the objection. No record was made of the jury views themselves, but given that there was no further discussion of the procedure, we presume that the jury observed the lights and heard the sirens in the manner requested by the State.

On appeal, Ambacher renews his argument that the second part of the jury view — when the officers drove their vehicles toward the jurors with their lights and sirens activated — was improper.[36] Ambacher relies on a line of cases holding that when an experiment or reenactment purports to simulate actual events, the party introducing the experimental evidence has a heavy burden to demonstrate the substantial similarity

---

[36] Parts of Ambacher's brief could be construed as challenging both parts of the demonstration. Ambacher, however, never objected to the first part of the demonstration at trial and would be required to show plain error. We therefore note that to the extent Ambacher is now challenging the first part of the jury view, we find no plain error. *See Adams v. State*, 261 P.3d 758, 764 (Alaska 2011).

of the conditions of the experiment to the actual event in order to provide a fair comparison.[37]  As we have previously explained:

> Evidence of this kind should be received with caution, and only be admitted when it is obvious to the court, from the nature of the experiments, that the jury will be enlightened, rather than confused.  In many instances, a slight change in the conditions under which the experiment is made will so distort the result as to wholly destroy its value as evidence, and make it harmful, rather than helpful.[38]

Relying on these rules governing experimental evidence, Ambacher argues that the conditions of the second part of the jury view were not substantially similar to the actual event, and that the court therefore erred in allowing it to occur.

But contrary to Ambacher's assertion, the jury view that occurred in this case was not an "experiment" or a "reenactment."[39]  There was no attempt to re-create the police chase or the environment in which it occurred; rather, the purpose of the jury view was to enable the jurors to watch the patrol vehicle lights and listen to the sirens so that they could understand what those lights and sirens looked and sounded like.

Other courts have similarly concluded that allowing jurors to observe the emergency lights and sirens of the vehicles involved in the charged offense does not constitute an experiment or reenactment, but rather serves to illustrate the testimony of witnesses and constitutes "real evidence" of items that played a role in the incident.[40]

---

[37]  *See Smith v. State*, 771 P.2d 1374, 1378 (Alaska App. 1989).

[38]  *Id.* at 1379 (quoting *Pacheco v. United States*, 367 F.2d 878, 881-82 (10th Cir. 1966)).

[39]  *See* 2 McCormick on Evidence, § 217 (8th ed. 2020) (discussing how a demonstration becomes an experiment "when the witness, particularly an expert witness, attempts to reenact some aspect of an event in order to show a specific result that is at issue in the trial").

[40]  *See, e.g.*, *Williams v. Bethany Volunteer Fire Dep't*, 298 S.E.2d 352, 354 (N.C. 1983);

(continued...)

Ambacher argues that those cases are distinguishable because the trial court in this case did not instruct the jury that the evidence was not intended to replicate the events of the underlying incident. Ambacher, however, never sought any such instruction at trial, and, given the significant differences between the circumstances of the jury view and the actual police pursuit that occurred in this case, there is little risk that the jury would have been confused on this point. (Indeed, Ambacher's attorney highlighted the differences in closing argument.) Certainly, if Ambacher had requested such an instruction, it would have been appropriate to provide it. But in the absence of any request, the court did not commit plain error in failing to instruct the jury on this point *sua sponte*.[41]

Here, the officers testified that the vehicles viewed by the jurors (including the lights and sirens) were the same vehicles in which they pursued Ambacher. Ambacher has failed to show that the trial court's decision to allow this jury view was an abuse of discretion.[42]

*Conclusion*

We REVERSE Ambacher's conviction for first-degree failure to stop at the direction of a peace officer (and the jury's verdict for reckless driving), and we REMAND this case to the superior court with directions to enter a conviction for second-degree failure to stop at the direction of a peace officer and sentence Ambacher for this offense.

---

[40] (...continued)
*State v. Mitchell*, 784 P.2d 568, 612 (Wash. App. 1990).

[41] *See Lindbo v. Colaska, Inc.*, 414 P.3d 646, 651 (Alaska 2018) ("Plain error review applies when a party failed to properly raise a jury instruction error at trial.").

[42] *See Bowlin v. State*, 823 P.2d 676, 680 (Alaska App. 1991).